**Harry HARTLEY, d/b/a International Motor Rebuilding Co., Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16913.**

United States Court of Appeals
Fifth Circuit.

Feb. 6, 1958.

Rehearing Denied March 17, 1958.

---

4. Emphasis supplied.

R. F. Roberts, Beaumont, Tex., Seymour Lieberman, Geo. D. Neal, Houston, Tex., James F. Flanagan, Chicago, Ill., for appellant.

Malcolm R. Wilkey, U. S. Atty., Houston, Tex., Charles K. Rice, Asst. Atty. Gen., John N. Stull, Acting Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Fred E. Youngman, Myron C. Baum, Attys., Dept. of Justice, Washington, D. C., Willard I. Boss, Asst. U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, TUTTLE, Circuit Judge, and HANNAY, District Judge.

HUTCHESON, Chief Judge.

The suit was, under 26 U.S.C.A. Sec. 3443, for the refund of $57,914.61 allegedly overpaid for the period October, 1948 to January, 1953, as manufacturer's excise taxes under 26 U.S.C.A. Sec. 3403, imposing a tax on the sale and manufacture of auto and truck parts and accessories.

The ground for recovery stated in taxpayer's claims for refund was as follows:

"The tax is limited to the sale price of only the old used parts reworked, or machined, by taxpayer. The tax does not apply to subsequent sales by taxpayer, a purchaser of new automobile parts, purchased tax paid by him, from other manufacturers. The putting together by taxpayer of new automobile parts complete in themselves purchased taxpaid, with old parts machined by him, which are also complete within themselves, and on which he paid the tax, does not result in another and different taxable article."

To each claim was attached a schedule purporting to show the total "sales price" of those components of the engine with respect to which the taxpayer conceded that he was a manufacturer. In these schedules, for example, taxpayer asserted that International's rebuilt Plymouth engine should be taxed on a basis of $17.75 although during the same period of the time involved International sold a Plymouth engine for $125, allowing a $25 trade-in allowance if an old engine were turned in.

In his complaint the taxpayer alleged that he "is not a manufacturer or a dealer in articles enumerated in code section 3403(a) and (b)"; that he "deals exclusively in automobile replacement parts enumerated in and covered by Internal Revenue Code Section 3403 (c)"; that he purchases newly manufactured parts on which he pays the tax and is not further liable for tax on any subsequent sale thereof; that he does machine old parts used in his operations and "admits a tax is due on said old parts machined, under Sec. 3403(c), based on the wholesale market price in Houston, Texas, of said old parts as of the time and stage of machining, and that thereafter said parts are not taxable"; and that the taxpayer, "after payment of a tax on the first sale of new and old parts * * *, is not tax-

able on the installation and further sale of said parts, installed as set out in paragraph 3.C. above". Par. 3 of the complaint alleged in substance that in October, 1948, the taxpayer "entered into the automobile motor business" under the name of International and that "said business consisted of three separate departments, namely:" (A) Parts Department, where new parts are purchased tax paid, direct from parts manufacturers, and kept in a parts room to be dispensed in installing parts in motors; (B) Machine Department, where the old motors are torn down, old usable parts cleaned and machined; and (C) Installation Department, where articles enumerated in (A) and (B) are brought in, in a knocked down condition, and are put together, making up a motor.

The government filed an answer and a counterclaim in the sum of $4691.37, based upon reducing the credits taken by the taxpayer on his excise tax return for taxes paid on newly manufactured parts used by International to produce rebuilt engines.

The case was fully tried to the court without a jury and there were findings of fact and conclusions of law [1] adverse

---

1. The district court found the facts material to the issues here involved substantially as follows:

During the taxable period involved the taxpayer was sole proprietor of an unincorporated business, located in Houston, Texas, known as International Motor Rebuilding Co. (hereinafter International). Since the latter part of 1948 International has been engaged in the business of rebuilding automobile and truck engines, or motors, and selling them at wholesale to various stores, some of which were and are owned by the taxpayer, located in Texas, Oklahoma and Louisiana.

An automobile or truck engine is a single functioning unit, and both new and rebuilt engines are available to the consumer and are regularly sold as a single article for installation as a replacement in a motor vehicle. The largest and most costly component of the engine is the block, a casting that contains the cylinders and in some model engines, the ports in which the valves are seated. All other components of the engine fit into or are attached to the block. The other principle components of the engine are the crankshaft, the pistons (one for each cylinder), the connecting rods (one for each piston), the camshaft, the valves (two for each cylinder) and the crankshaft, camshaft, and connecting rod bearings. An automobile engine contains some 52 different types of parts, but the block, the crankshaft, the pistons, the camshaft and the valves represent about 90 percent of the price of a newly-manufactured engine.

To produce its rebuilt engines, International uses newly manufactured components that it has purchased tax paid from manufacturers or jobbers, and other components that it has salvaged from old engines owned by it. It acquires some of these old engines by purchase, at prices as low as $10. It acquires most of its old engines by giving a trade-in allowance or credit against the outright purchase price of the rebuilt engine if the purchaser turns in an old engine. During the latter part of the period here involved the trade-in allowance was $25. Old engines acquired by it are engines that, because of wear or for other reasons, are malfunctioning or are not functioning at all.

International completely disassembles the old engines that it acquires, cleans and degreases the various components, and then inspects those components to determine which are salvageable. Since the rebuilt engines produced by it invariably contain certain newly-manufactured components, those components of the old engines are always discarded. The principal components so discarded are the pistons and the bearings. In addition, the condition of any one or more of the other components of the engine, including the block, may be unsuitable for rebuilding and will be discarded. Salvageable blocks, crankshafts, valves, in many instances connecting rods, and occasionally camshafts, obtained by International from its old engines are machined or rebuilt by it with specialized equipment to make them usable as follows: The blocks are bored to give the cylinders a uniform size, valve ports in the blocks containing them are refaced or reseated by grinding, and cracks in the blocks are cold welded. The bearing surfaces of the crankshaft are reground. Valves are refaced by grinding. Camshaft surfaces are reground. Other components of the engine, if salvageable at all, do not require machining before reuse.

The parts salvaged by International from its old engines and the new parts

to plaintiff and in favor of the government, and on the basis of its findings and conclusions the district court entered judgment against the taxpayer on his refund claim and also gave judgment for the government on its counterclaim.

Though the taxpayer attacks the findings and conclusions seriatim as erroneous, his real insistence here is that the appeal presents a single question, whether International's operations constitute manufacturing within the meaning of Sec. 3403, under the authority of which the taxes were collected.

■ The United States, declaring in its brief: "Taxpayer is engaged in the business of rebuilding automobile engines from salvaged parts, the most important of which are machined by him to make them usable, and from newly manufactured parts purchased by him. He

filed his claim for refund and brought this suit to recover a part of the taxes paid on the ground that the rebuilt automobile engines were not taxable 'parts' within the meaning of Sec. 3403(c) of the Internal Revenue Code of 1939, and that he was taxable only on the value of the salvaged parts machined by him, and the district court rejected this contention."; thus states as it sees them the questions this appeal presents:

"1. Whether the refund claims are broad enough to permit him in this action to claim a refund on the ground that he was not a 'manufacturer' within the meaning of the statute as well as on the ground that rebuilt engines are not automobile 'parts'.

"2. If the ground referred to in question 1 is available to him, wheth-

that it has purchased taxpaid are placed in separate bins according to type. It then produces rebuilt engines on an assembly line, utilizing the salvaged parts from old engines and the new parts purchased taxpaid. The assembly process requires technical skill and special equipment. Salvaged parts do not customarily go back into the engine block from which they may have originated. With the usual but not the invariable exception of the camshaft and, in some model engines the connecting rods, every major component of its rebuilt engines is either a newly-manufactured part purchased by it or is a salvaged part that it has machined in order to make it usable.

After the rebuilt engines produced by it have left its assembly department, they are test run on an installation known as a dynamometer to determine if their performance is satisfactory. Thereafter, the engine is painted, its production number is stamped into the metal of the block, and a decalcomania reading "International Built" is affixed.

About 75 percent of International's total production of rebuilt engines during the period involved was sold to retail outlets owned by the taxpayer, and the remainder was sold to other retailers, including occasional sales to Sears, Roebuck and Company which sells rebuilt engines under its own name. It gives a written warranty with the sale of its product that is more generous in terms than the warranty given with the sale of a newly-manufactured engine. Both by word

of mouth salesmanship and by written advertisement its rebuilt engines are described to the public as giving "brand new performance" and written advertisements describe the product in such terms as "factory rebuilt", "precision rebuilt" and "remanufactured motors".

The old engines used by it as a source of salvageable parts are malfunctioning and not serviceable. Except as to size of certain components, the rebuilt engines produced by it meet the factory specifications of the original manufacturer. The rebuilt engines produced by it are not the same articles as the old engines used by it as a source of salvageable components. Its rebuilt engines, as well as those of other rebuilders, compete with newly-manufactured engines for the motor vehicle engine replacement market.

In its conclusions of law the district court rejected taxpayer's contention that a rebuilt automobile motor was not a "part" within the purview of the statute, and also concluded on authority of this court's decision in Carmack v. Scofield, 5 Cir., 201 F.2d 360, that because he had failed to make the contention in his refund claim he is precluded in this action from contending that International's rebuilding operations did not constitute manufacturing within the meaning of the statute. The court also concluded that even if the contention were open to him it was without merit and that there was no overpayment and therefore no basis for a refund.

er the operations employed in the production of rebuilt automotive engines constitutes manufacture or production, and the rebuilt engines constitute automobile 'parts' within the meaning of the taxing statute.

"3. In any event, whether he has properly alleged and proved that he bore the burden of any part of the excise taxes sued for in this action."

Taking each of these questions up in turn, we are of the clear opinion as to the first that under the facts of this case, Burrell v. Fahs, 5 Cir., 232 F.2d 163, and not Carmack v. Scofield, 5 Cir., 201 F.2d 360 is controlling here, and that, therefore, the taxpayer's claim for refund comprehended, embraced, and included the issue tendered by taxpayer in his complaint and here, whether International's operations constituted manufacturing within the meaning of the applicable statute.

■ For the reasons hereafter briefly stated, we are also of the opinion that appellee's second, appellant's single, question, whether appellant's operations in fact constituted manufacturing under the act and there was no overpayment of taxes, must be answered in the affirmative. Because we are, we will not, therefore, reach or concern ourselves with appellee's question No. 3, whether appellant bore the burden of the tax.

Turning then to the crucial issue in the case, whether appellant's operations constituted manufacturing, we are obliged to say that, despite the valiant efforts of appellant, by detailed argumentation and the citation of cases, to invest with the appearance of substantial merit his views of the question, we are of the opinion that the investiture is only seeming and that upon principle and authority, the contentions of appellant, that the engines he is making and selling are not automobile parts and that in making them for sale and selling them, he is not engaged in manufacturing, are without substantial basis. This is particularly true of his reliance on patent infringement decisions and on state court decisions, as to the meaning of repair, rebuilt and reconstruction, and his scouting of the line of decisions in tax cases construing and applying Sec. 3403, beginning with Clawson & Bals v. Harrison, 7 Cir., 108 F.2d 991 and including Clawson & Bals v. United States, 7 Cir., 182 F.2d 402, Hackendorf v. United States, 10 Cir., 243 F.2d 760, Campbell v. Brown, 5 Cir., 245 F.2d 662, will not at all do. Indeed, we think that to hold, as appellant asks us to do, under the facts of this case that he is not manufacturing, producing, or selling automobile parts, would be to shut our eyes to admitted facts and established legal principles.

Of appellee's counterclaim, no more need be said than that we agree with the conclusion of the district court that, except as to the matters agreed upon by the parties, taxpayer "has not otherwise introduced evidence to remove the presumptive correctness of the administrator's determination", and has therefore not sustained his burden.

The judgment was right. It is affirmed.