I. W. THOMPSON, Individually, and wife, Charlie Thompson, and I. W. Thompson, Trustee, for Selected Minority Funds, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 2881.

United States District Court
E. D. Texas,
Tyler Division.

Aug. 17, 1962.

A. A. White, Houston, Tex., for plaintiffs.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Hubert M. Doster, William M. Ravkind, Dept. of Justice, Washington, D. C., William Wayne Justice, U. S. Atty., Lloyd W. Perkins, Asst. U. S. Atty., Tyler, Tex., for defendant.

SHEEHY, Chief Judge.

This is a suit by taxpayers, I. W. Thompson and wife, Charlie Thompson, and by I. W. Thompson, as Trustee for Selected Minority Funds, for recovery of income taxes, penalties and interest in the aggregate amount of $171,665.65. Plaintiffs allege and contend the Internal Revenue Service wrongfully assessed against and collected from them for the years 1952, 1953, 1954, 1955 and 1956. The case, both as to Defendant's Motion to Dismiss for lack of jurisdiction and on the merits, was submitted on a Stipulation of Facts and written arguments and briefs.

I. W. Thompson is a farmer 82 years of age who lives in the rural community of Van, Van Zandt County, Texas. His wife, Charlie Thompson, is approximately 77 years of age and has been substantially blind since prior to 1949. The Thompsons have no children and live now, and have throughout the tax years in question, very simple, frugal and Spartan lives. Both were under the usual disabilities of their ages throughout the tax periods involved.

On September 19, 1949, I. W. Thompson, referring to himself as Donor, executed a trust instrument establishing a trust known as "Selected Minority Funds," hereinafter referred to as the

Trust, and named himself as Trustee.[1] The trust instrument is duly recorded in Volume 508, Page 595, of the Deed Records of Van Zandt County, Texas. In September 1951, I. W. Thompson and wife, Charlie Thompson, executed a deed conveying to I. W. Thompson, Trustee for the Selected Minority Funds, nine-tenths of all of the oil, gas and other minerals in and under approximately 86 acres of land in the highly productive Van Field in Van Zandt County, Texas, which deed is duly recorded in Volume 397, Page 511, of the Deed Records of Van Zandt County, Texas. From and after the effective date of said deed, namely, June 1, 1951, the oil and gas royalties attributable to the mineral interest conveyed by said deed were paid to Selected Minority Funds. The Plaintiffs I. W. Thompson and wife, Charlie Thompson, duly filed joint income tax returns for each of the years involved in this action, but since they did not consider the income paid to Selected Minority Funds as income accruing to them, they did not include said income, which was in a substantial amount, in their returns. Furthermore, since they did not regard the Trust as a taxable trust, they did not file an income tax return on behalf of the Trust for any of the years involved.

The Internal Revenue Service disagreed with the position of Plaintiffs and, after a complete investigation, made deficiency assessments against Plaintiffs I. W. Thompson and wife, Charlie Thompson, for each of the years involved. I. W. Thompson and wife did not voluntarily pay the deficiencies assessed, and they were, therefore, collected by levy. The assessed deficiencies for the years 1953, 1955 and 1956, aggregating the sum of $97,995.67, were collected by levy on the bank account of Selected Minority Funds. Plaintiffs I. W. Thompson and wife, Charlie Thompson, subsequently filed in their own names, as taxpayers, claims for the deficiency assessments made and collected for the years 1952 and 1954 with the District Director of the Internal Revenue Service in Dallas, Texas, hereinafter referred to as the Director. As to the deficiency assessments assessed and collected for the years 1953, 1955 and 1956, claims were filed by I. W. Thompson in the name of Selected Minority Funds, as taxpayer, with the Director in Dallas, Texas.

The broad questions presented are:

(1) Whether the Court has jurisdiction of this action or any part thereof because of the taxpayers' failure to file sufficient claims for refund for each of the years involved;

(2) Whether the income of Selected Minority Funds is taxable to taxpayers on account of I. W. Thompson's retention of a certain amount of control over the corpus and income of such trust; and

(3) Whether taxpayer I. W. Thompson retained a reversionary interest in the corpus of the trust which might reasonably be expected to take effect within ten years from the date of the transfer of the mineral interest by I. W. Thompson and wife, Charlie Thompson, to the Trust.

As reflected by the terms of the trust instrument creating the Trust, the Trust was created "for the purpose of aiding worthy and deserving young men and women in securing that type of education which will best fit and qualify them to be useful citizens and to develop in them a high standard of leadership."

As to those eligible and qualified to be beneficiaries of the Trust, the instrument provides, in effect, that any young man or woman of good moral character who has sufficient scholastic training to meet the entrance requirements of the college or university which the person may select and who is principally interested in securing a college education for the purpose of becoming a useful citizen and a leader in the community and governmental affairs, shall be eligible to accept the benefits of the Trust provided

1. Any reference in the record to "Selected Minority Trust" is a reference to the trust designated as "Selected Minority Funds."

such person in good faith declares a belief in advanced peaceful and democratic Socialism and an intention of working for unity of all branches of the movement and working against the aims of those who would embarrass others by false disloyalty charges even to prevent them from a fair chance in college and agreeing to refrain from the use of intoxicating liquor and tobacco in any form during the time he or she is receiving aid from the Trust and declares a purpose to thereafter continue such abstinence. The trust instrument further provides that the Trustee and his successors should have wide discretionary power in selecting from the applicants those persons who, in their opinion, will most nearly conform to the standards set forth in the Trust and will conform to the ideals expressed in the Trust. As to the withdrawal of aid to a beneficiary of the Trust, the trust instrument provides:

"The Trustee and his successors. shall, for any material breach of any of the principles herein set forth or for any other good cause, have the authority to withdraw support from. anyone receiving benefits from these trusts after giving thirty days notice of intention to withdraw such support; provided, however, that the Trustees herein named and provided for shall not act arbitrary or capricious in the withdrawal of such support.

"When aid has been granted to any person and they have entered upon a course of study at any school designated herein, such aid shall be continued, unless withdrawn for the reasons above stated, until a degree has been obtained from such institution if such beneficiary is putting forth a reasonable effort in the pursuit of their studies and is making reasonable progress therein."

The trust instrument further provides in part as follows:

"It is expressly understood that all money received by the Trustee or his successors during said period of time shall remain the property of said Trustee and his successors and absolute title to all of such money as may be received by said Trustee or his successors during the life of these trusts shall vest in such Trustee and his successors in trust subject to the terms and conditions herein set forth, *without any reversionary interest in the Donor. Donor hereby forever waives the right and the power to revoke these trusts and it shall remain absolute.*

\*   \*   \*   \*   \*   \*

"Donor also reserves the right to make amendments to these trusts with respect to the manner and methods of administration and also with respect to the qualifications of the beneficiaries to be selected hereunder and the manner of their selection, *but neither the Donor nor his successors shall have authority to change or alter the purposes of these trusts to the extent that it will cease to be educational trusts for the time herein specified.*" (Emphasis supplied)

The deed, above referred to, by which I. W. Thompson and wife conveyed the the mineral interest to the Trust contains the following provision:

"This conveyance is made, however, subject to the following condition: The purpose of this conveyance is to create educational funds as is fully described in the trust agreement referred to above herein and if at any time the proceeds from the oil produced from the lands herein conveyed are held to be subject to income taxes, then in that event this conveyance shall become ipso facto null and void and all the property herein conveyed shall revert to and become the property of the Grantor I. W. Thompson as his separate property."

Subsequent to creating the trust and conveying the mineral interest to it, Thompson, on November 7, 1951, wrote the Commissioner of Internal Revenue

in Washington, D. C., inquiring as to deducting for income tax purposes all amounts contributed to the trust. On December 20, 1951, the Deputy Commissioner of Internal Revenue replied to Thompson's letter and requested additional information. Thompson did not furnish the requested additional information. On March 24, 1952, the Deputy Commissioner of Internal Revenue again wrote Thompson advising that inasmuch as Thompson had failed to establish that Selected Minority Funds was entitled to an exempt status income tax returns should be filed by Thompson on behalf of such Trust. No income tax return was filed by or on behalf of the Trust for any of the years involved. The only taxes involved in this action were assessed against I. W. Thompson and wife, Charlie Thompson.

Sometime prior to August 2, 1957, an agent of the Internal Revenue Service made an examination of the tax returns of I. W. Thompson and wife, Charlie Thompson, for the tax years in question, and an investigation of the liability of the Thompsons for income taxes for those years. In the course of said examination and investigation, the agent contacted I. W. Thompson and discussed with him the trust, its provisions and the failure of the Thompsons to report as income to them the income to the Trust. The agent made a report of the examination of the Thompsons' income tax returns for the years 1952 and 1954 and made a separate report of his examination of the Thompsons' income tax returns for the years 1953, 1955 and 1956. The report as to 1952 and 1954, which was the basis for the deficiency assessments made for those years, showed that there were additional income taxes owed by the Thompsons for each of the years 1952 and 1954. That portion of the additional taxes owed for those two years, for which recovery is sought herein, was shown to have resulted from the Thompsons' failure to include as income the income that the Trust received by way of royalties attributable to the mineral interest the Thompsons had conveyed to the Trust. The agent's report as to the years 1952 and 1954 provided in part as follows:

"The additional oil and gas royalty income, together with the deductions for depletion and taxes thereon as explained below is the royalty income from the 9/10ths of the taxpayers royalty interest which they had conveyed to the Selected Minority Funds, I. W. Thompson (husband taxpayer), Trustee. The taxpayers did not include such income on their returns as they consider it income of the trust and not their income. The trusts do not qualify for exemption from income tax; heretofore no distribution has been made to any beneficiaries of such trusts; the income received in the name of these trusts has all been accumulated except that some of it was paid in purchasing some land in the name of the trust. Such income is accordingly included in the income of the taxpayers and the additional deductions pertaining thereto also made.

"A copy of the more essential sections of the instrument creating the trusts is attached. Taxpayer says also as trustee of the Selected Minority Funds that he will not agree that income tax returns are required to be filed for the trusts and that none have been filed."

The agent's report for the years 1953, 1955 and 1956, which was the basis for the deficiency assessments made for those years, showed that there were additional income taxes owed by the Thompsons for each of those years because of the Thompsons' failure to include as income the income that the Trust received during those years by way of royalties attributable to the mineral interest the Thompsons had conveyed to the Trust. That report contained in substance the same statement that was contained in the agent's report for the years 1952 and 1954 which is hereinabove quoted. There was attached to the agent's report for the years 1952

and 1954 and to the agent's report for the years 1953, 1955 and 1956 a copy of the essential sections of the instrument creating the Trust. Each report of the agent showed the taxpayers as being I. W. Thompson and wife, Charlie Thompson.

Subsequent to the Internal Revenue Service receiving in its office in Dallas the reports of the agent, above referred to, the Director forwarded a copy of each of said reports to the Thompsons in order to inform the Thompsons of the additional taxes the Internal Revenue Service contended they were obligated to pay for each of the years in question and in an effort to collect said additional taxes. The Thompsons refused to pay the additional taxes assessed, and the Internal Revenue Service proceeded to collect same by levy. The additional taxes assessed for the years 1953, 1955 and 1956 were collected by levying upon the bank account of Selected Minority Trust in the Citizens First National Bank of Tyler, Texas. The Notice of Levy served by the Internal Revenue Service on the Citizens First National Bank showed on its face as being the taxpayer who owed taxes "Selected Minority Trust by I. W. Thompson, Route 3, Grand Saline, Texas." The Notice of Levy was served on said bank on August 6, 1958.

Subsequent to the additional taxes being collected for the years in question, Thompson forwarded to the Director at Dallas a claim for refund for each of the years in question. Presumably, the claims were forwarded together as each of same was received in the Office of the Director in Dallas on March 27, 1959. Each of said claims was on Internal Revenue Service Form No. 843, a form prescribed by the Internal Revenue Service for use in making claim for refund of income taxes alleged to have been wrongfully assessed and collected. The claims for the years 1952 and 1954 showed the taxpayers as being "I. W. Thompson and/or Charlie Thompson." Each of those claims was signed by I. W. Thompson and wife, Charlie Thompson. The claims for the years 1953, 1955

and 1956 showed the taxpayer as being "Selected Minority Funds" and each of said claims for those three years was signed "Selected Minority Funds by I. W. Thompson, Trustee." Each of the claims for the years 1952 and 1954 in the space provided in the claim form for a statement of the taxpayer's reasons for asserting the claim should be allowed contained the following statement:

"The claim indicated herein is without cause. All royalty payments for the year indicated were paid directly to Selected Minority Funds authorized by Deed of Record. Payments directly to these trust accounts automatically became $1,000 trusts untaxable. This levy was unjustified in two ways."

In the such space provided in the form, the claims filed for the years 1953, 1955 and 1956 contained the following statement:

"The claim above indicated herein against the Selected Minority Trust is unjustified in one all-sufficienct way. By authority of the trust and deeds creating them, all royalty checks automatically became $1,000 untaxable trusts, not a part of one trust, and without income and only one purpose to serve. They have persistently tried to serve that purpose."

On April 15, 1959, by letter of transmittal of that date addressed to I. W. Thompson, the Director returned to Thompson each of the claims for refund for each of the years in question that Thompson had theretofore forwarded to the Director. The Director also enclosed in said letter additional Forms No. 843 for Thompson's use in refiling the claims. With the formal parts omitted, the Director's said letter of transmittal was as follows:

"We do not find any returns filed in the name of the 'Selected Minority Fund.'

"Please tell us under what names the returns were filed. If these

Forms 843 are for amounts paid on personal income tax returns, they should be filed in the exact name shown on the original return, and if for joint returns of husband and wife, the claims must be signed by both husband and wife.

"We are enclosing Forms 843 for your use in refiling the claims."

Subsequent to April 15, 1959, and prior to September 23, 1959, Thompson contacted a representative of the Internal Revenue Service in Tyler, Texas, regarding the claims for refund for the years in question he had theretofore submitted to the Dallas Office of the Internal Revenue Service. Thereafter on September 23, 1959, the Director wrote the Thompsons a letter in which he stated:

"I have received the request from J. D. Langford, Jr., Group Supervisor at Tyler that you be advised regarding the claims you submitted this office.

"On April 15, 1959, the claims were returned to you with blank Forms 843 for the purpose of refiling. You were requested to submit with your refiling of Forms 843, what names and address the returns were filed under. The corrected Forms 843 have not been submitted to this office.

"Blank Forms 843 are again being furnished to you for execution and submission to this office. The Forms 843 should be filed in the exact name shown on the original return and if the original return was filed as a joint return of husband and wife, the claim must be signed by both husband and wife."

Other than those above mentioned, no other claims for refund were filed by the Plaintiffs, or either of them, with the Internal Revenue Service for any of the years in question.

Defendant's Motion to Dismiss this action for lack of jurisdiction is based on a contention that I. W. Thompson and wife, Charlie Thompson, failed as to each of the years in question to file a claim for refund as required by the statutes and the Treasury Regulations enacted pursuant thereto, in that each of the claims filed with the Director by the Thompsons for the years in question failed to set forth in detail each ground upon which the refund for that year was claimed and facts sufficient to apprise the Internal Revenue Service of the exact basis thereof. As to the claims filed for the years 1953, 1955 and 1956, respectively, the Defendant further contends that same do not constitute claims for refund by the taxpayers I. W. Thompson and wife, Charlie Thompson, as required by the statutes and regulations because the claim for each of those years showed the taxpayer to be "Selected Minority Funds" and did not show the taxpayers as being I. W. Thompson and wife, Charlie Thompson.

Section 6511(a) of the Internal Revenue Code of 1954 (26 U.S.C.A., 1958 Edition, § 6511) provides, in effect, that a claim for refund of an overpayment of income taxes shall be filed by the *taxpayer* within three years from the time the return was filed or two years from the time the tax was paid, whichever of such periods expires the later. Section 7701(a) (14) of the Internal Revenue Code of 1954 (26 U.S.C.A., 1958 Edition, § 7701(a) (14)) provides, in effect, that the term "taxpayer" as used in the Internal Revenue Code, unless otherwise distinctly stated, means any person subject to any internal revenue tax. Section 7422 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 7422) provides, in effect that no suit shall be maintained for recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected until a claim for refund has been filed with the Secretary of the Treasury or his delegate according to the provisions of law in that respect, and the regulations of the Secretary of the Treasury or his delegate established in pursuance thereof.[2]  Treas-

2. Sec. 3772 of the Internal Revenue Code of 1939 made like provisions.

ury Regulations on Procedure and Administration (1954 Code) § 301.6402–2 provides, in effect, that no refund for overpayment of income taxes may be allowed unless, before the expiration of the statutory period of limitation, a claim therefor has been filed by the *taxpayer;* that the claim for overpayment must set forth in detail each ground upon which a refund is claimed and sufficient to apprise the Commissioner of the exact basis thereof; that the statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury; and that a claim which does not comply with such provisions will not be considered for any purpose as a claim for refund.[3]

█ It is now well established, under the provisions of the statutes and regulations referred to in the next preceding paragraph, that the timely filing by a taxpayer of a claim for refund with the Internal Revenue Service is a statutory prerequisite to recover taxes alleged to have been illegally assessed and collected, and if such a claim is not timely filed, the courts are without jurisdiction to hear and determine such a claim for refund of taxes. United States v. Felt & Tarrant Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025; Carmack v. Scofield (5th Cir.) 201 F.2d 360; and Snead v. Elmore (5th Cir.) 59 F.2d 312.

█ The *taxpayers* seeking the refund in this cause and against whom the deficiency assessments that form the basis of this action were made against and collected from are I. W. Thompson and wife, Charlie Thompson, and not Selected Minority Funds. No claim for refund for either of the years 1953, 1955 and 1956 was ever made in the name of I. W. Thompson and wife, Charlie Thompson. The only claims for those years were made in the name of Selected Minority Funds as taxpayer and were signed by I. W. Thompson as Trustee for Selected Minority Funds, and this is true in spite of the fact the Director in his

letter of April 15, 1959, to Thompson, hereinabove quoted, and by which he returned to Thompson the claims filed in the name of Selected Minority Funds for the years 1953, 1955 and 1956, stated that his office could find no tax return filed in the name of "Selected Minority Funds," requested that Thompson advise him of the names under which the returns were filed and instructed Thompson that claims for income tax refunds should be filed in the exact name shown on the return and, if for joint returns of husband and wife, the claims must be signed by both husband and wife. Similar information was again given to the Thompsons in the Director's letter under date of September 23, 1959, and above quoted. Insofar as the years 1953, 1955 and 1956 are concerned, we simply have a case where the taxpayers, namely, I. W. Thompson and wife, Charlie Thompson, wholly failed to file a claim with the Internal Revenue Service for a refund of taxes they seek to recover in this cause as required by the statutes and Treasury regulations relating to claims for tax refunds and suits seeking such refunds, which statutes and regulations are hereinabove referred to. Because of such failure to file claims, this Court is without the power or authority to entertain this action insofar as Plaintiffs seek a refund of taxes and penalties for the years 1953, 1955 and 1956.

█ As to the years 1952 and 1954, the claims for refunds filed with the Internal Revenue Service were made in the name of I. W. Thompson and wife, Charlie Thompson, as the taxpayers and were duly signed by I. W. Thompson and Charlie Thompson, verified by a written declaration that it was made under the penalties of perjury. Each claim showed the year for which it was made and the amount claimed as a refund and the date the amount claimed as a refund was paid. Defendant's sole attack upon the claims for those two years is based on a contention that the claims do not set forth in detail the grounds upon which the re-

---

3. Substantially identical provisions are contained in § 39.322–3 of Treasury Regulations 118 (1939 Code).

funds are claimed and do not sufficiently apprise the Commissioner of the exact basis thereof. However, it appears that the first time the Internal Revenue Service questioned the sufficiency of the claims for 1952 and 1954, because of the failure of the taxpayers to properly set forth in said claims the grounds therefor, was when the Defendant's Motion to Dismiss was filed in this action. When the Director returned to the Thompsons their claims for refund for the years 1952 and 1954, along with their claims for refund for the years 1953, 1955 and 1956, with his letter of April 15, 1959, he made no mention in said letter as to any claimed insufficiency of the claims for 1952 and 1954. It is obvious that all statements made in that letter had reference to the claims for the years 1953, 1955 and 1956 showing the taxpayer to be "Selected Minority Fund" and had no reference to the claims filed for the years 1952 and 1954 in the name of I. W. Thompson and wife, Charlie Thompson. The same is true as to the Director's letter of September 23, 1959, addressed to the Thompsons, hereinabove quoted.

As to the purpose of regulations requiring that a claim filed for refund of taxes alleged to have been illegally assessed and collected set forth in detail each ground upon which the refund is claimed and sufficient to apprise the Commissioner of the basis thereof, the Court of Appeals for the Fifth Circuit in Snead v. Elmore, supra, 59 F.2d at page 314 stated: "The purpose is to enable the claimed errors to be corrected by the Commissioner and suits to be minimized, and if disagreement persists to limit the litigation to the matters which have been so re-examined and in reference to which the tax officers are fully prepared to defend the issue." In determining the sufficiency of the claims for 1952 and 1954, this stated purpose should be kept in mind.

What did the Thompsons, particularly I. W. Thompson, know about their income tax returns and their tax liability for the years 1952 and 1954 when they prepared and forwarded their claims for refund for those years to the Internal Revenue Service? They, of course, knew the terms of the Trust instrument in question, and that the Internal Revenue Service had a copy of and knew the essential provisions of said Trust; they knew that they had not included in their tax returns for those years the royalty income attributable to the mineral interest that the Thompsons had theretofore conveyed to Selected Minority Funds because they considered the Trust and income to it to be tax exempt; they knew that the Internal Revenue Service did not consider said Trust and the income to it as being tax exempt; and they knew that the tax deficiencies assessed against them for those years was brought about because the Internal Revenue Service treated said royalty income paid to the Trust as income to the Thompsons as it did not consider the Trust to be tax exempt. What did the Director know about the Thompsons' income tax returns and their tax liability for the years 1952 and 1954 when he received the Thompsons' claims for refund for those years on March 27, 1959? He had in his possession, presumably in the tax return file of the Thompsons, the Thompsons' tax returns for the years 1952 and 1954, the Internal Revenue agent's report covering his examination and investigation of the 1952 and 1954 tax returns of the Thompsons and a copy of the essential sections of the Trust instrument by which the Trust known as the Selected Minority Funds was created. From those documents and instruments the Director knew the essential provisions of the Trust; he knew that the Thompsons had not included in their tax returns for those two years the royalty income attributable to the nine-tenths mineral interest the Thompsons had theretofore conveyed to Selected Minority Funds; he knew the Thompsons did not include such royalty income in their tax returns because they considered it income to the Trust, which they contended was tax exempt, and not their income; and he knew that the tax de-

ficiencies assessed against the Thompsons for those years was brought about because the Internal Revenue Service treated said royalty income payable to the Trust as income to the Thompsons, as it did not consider the Trust to be tax exempt. While it is true that the grounds stated in the claims for the years 1952 and 1954 are not as clear and in as much detail as an attorney specializing in tax law would have stated them, such grounds, when read in the light of the subject matter to which the claims related and the facts before and known to the Director at the time the claims were received, sufficiently advised the Internal Revenue Service that the Thompsons, as to their claims for refund for the years 1952 and 1954, were contending that the royalty income attributable to the nine-tenths mineral interest that was paid to the Trust was not taxable as income to them because the Trust was an educational and charitable trust within the meaning of the Internal Revenue laws and, thus, was tax exempt. That is the exact contention the Thompsons are making in this action as the basis for the refund sought for the years 1952 and 1954. Therefore, I find and conclude that the claims filed by the Thompsons for the years 1952 and 1954, and each of them, adequately meet the requirements of the pertinent statutes and Treasury Regulations relating to the filing of claims for tax refunds. See Higginson v. United States, 81 F.Supp. 254, 267, 113 Ct.Cl. 131.

We now pass to a consideration of this cause on the merits insofar as Plaintiffs seek a refund of the deficiencies assessed and collected for the years 1952 and 1954.

Section 170 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 170) provides, in effect, that, with certain limitations as to amounts, contributions or gifts to a trust created and operated exclusively for charitable or educational purposes are "charitable contributions" and are to be allowed as a deduction for income tax purposes.[4] Section 501 of the Internal Revenue Code of 1954 (26 U.S.C.A. § 501) provides, in effect, that a trust organized and operated exclusively for charitable or educational purposes is exempt from the payment of income taxes.[5] Clearly the Trust was created for educational purposes exclusively and to the extent that it has been operated or attempted to be operated it has been operated exclusively for educational purposes. Therefore, contributions made to the Trust are deductible for income tax purposes and the Trust is exempt from income taxes unless such Trust is not entitled to such a status either because of other provisions of the Internal Revenue Code relating to trusts or because of provisions of Treasury Regulations relating to trusts, or both. It is the contention of the Defendant that the additional taxes assessed against and collected from the Thompsons for the years 1952 and 1954 were properly assessed under the so-called "Clifford" Regulations (Treasury Regulations 118, (1939 Code) § 39.22(a)–21)[6] and §§ 674 through 676 of the 1954 Internal Revenue Code (26 U.S.C.A. §§ 674 through 676) because (1) of the extent to which Thompson retained dominion and control over the income to the Trust and (2) at the time of the conveyance of the mineral interest to the Trust by the Thompsons it could reasonably be expected that that portion of the corpus of the Trust, or the income therefrom, would revert to Thompson within ten years.

Under the "Clifford" Regulations and the corresponding Code provisions (1954 I.R.C. §§ 671–677) a grantor of a trust may be taxed with the income of such trust if he has retained the requisite incidents of ownership or con-

4. Similar provisions were contained in § 23 of the Internal Revenue Code of 1939.

5. Similar provisions were contained in § 101 of the Internal Revenue Code of 1939.

6. Said regulations are commonly referred to as the "Clifford" Regulations because same were adopted pursuant to the implied invitation of the Supreme Court in its opinion in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

trol. Relying on those Regulations and corresponding Code provisions, the Defendant contends, first, that the powers of administration and control contained in the Trust, without consideration of the powers to amend, make Thompson the practical owner of the Trust funds, which are therefore taxable to him, and, if wrong, as to that contention that, second, the administration and other control powers now in the Trust, plus those that could be added by amendment, cause the income from the Trust to be taxable to Thompson. The specific powers, other than the power of amendment, referred to by the Defendant, are the power to "select its beneficiaries and to withdraw aid from the beneficiaries for any reason he deemed to be good cause" and the power "to presumably terminate the Trust at will."

Presumably, the Defendant is contending that Treasury Regulations 118, (1939 Code) § 39.22(a)–21(d) entitled "Power to Determine or Control Beneficial Enjoyment of Income or Corpus" and corresponding § 674 of the 1954 I.R.C. make the income to the Trust income to Thompson. Such a contention overlooks the express exception contained in said Regulation and Code provisions to the effect that such provisions have no application to charitable trusts. The power to select the trust beneficiaries and to exercise discretion with respect to the allocation of income to such beneficiaries as conferred on Thompson in the Trust does not constitute a taxable incident of ownership under either the "Clifford" Regulations or the corresponding Code provisions where, as here, the Trust is charitable in nature. The fact that the Trust may withdraw aid from a beneficiary for "good cause" does not alter this conclusion. "Good cause" must be construed to mean a justifiable cause in the light of the over-all purposes of the Trust.

■ The contention of the Defendant to the effect that since the trust instrument does not set a definite term for the Trust, Thompson, as sole Trustee, "could presumably terminate the Trust at will" is not well taken. Where no specific term is stated in a trust instrument, its limitation in time can be inferred from the general provisions of the trust instrument. 54 Am.Jur. § 70, Page 75. The trust instrument in question provides: "Donor hereby forever waives the right and the power to revoke these trusts and it shall remain absolute." When the Trust is considered as a whole, it is obvious that the Trust is to continue so long as there are funds with which to operate and can only be terminated when it runs out of funds.

■ Notwithstanding the contentions of the Defendant to the contrary, the powers conferred upon Thompson to amend the Trust do not confer upon Thompson such incidents of ownership or control as to make the income of the Trust taxable to him under the Treasury Regulations and Code provisions above referred to. It is clearly stated in the trust instrument that the purpose of the Trust is to aid worthy and deserving young men and women to secure that type of education which would best fit and qualify them to be useful citizens and to develop in them a high standard of leadership. Thus, in light of those and other provisions of the trust instrument, the purpose of the Trust is clearly educational. Although the trust instrument provides that Thompson could make amendments to the Trust with respect to the manner and method of administration and with respect to the qualifications of the beneficiaries to be selected and the manner of the selection, the instrument provides "but neither the Donor nor his successors shall have authority to change or alter the purpose of these trusts to the extent that it will cease to be educational trusts for the time herein specified." This limitation on amendment to prevent the destruction of the educational purpose of the Trust, together with the provisions in the Trust, to the effect that Thompson, as Donor, forever waived the right and power to revoke the Trust, and that said Trust shall remain absolute means that the Trust created by the trust instrument in question would forever remain absolute as an educational trust.

Any attempted amendment of the Trust in such a manner so as to permit Thompson to use the corpus of the Trust or income from it for his personal benefit or for any non-educational purpose for any other person would be in violation of the specific limitations contained in the trust instrument itself and could be prevented by the courts. Boyd v. Frost National Bank, 145 Tex. 206, 196 S.W.2d 497, 168 A.L.R. 1326.

■ Treasury Regulations 118, (1939 Code) § 39.22(a)–21(c) provides, in effect, that trust income is taxable to the grantor of a trust where he has a reversionary interest in the corpus or the income therefrom if, as of the inception of that portion of the trust, the reversionary interest will or may be reasonably expected to take effect in possession or enjoyment within ten years commencing with the date of the transfer of that portion of the trust.[7] In view of the provisions contained in the deed from the Thompsons, conveying the nine-tenths mineral interest to the Trust, to the effect that, if at any time the proceeds from the oil produced from the lands conveyed by said deed were held to be subject to income taxes, the conveyance shall become null and void and the property conveyed shall revert and become the property of I. W. Thompson, the Defendant contends it could be reasonably expected, at the time the Thompsons executed said deed, that the property conveyed to the Trust by said deed would revert to Thompson within ten years, and, therefore, under the Treasury regulation last mentioned the income from said property conveyed by said deed was income to the Thompsons and taxable to them as such. The Defendant cites no authority in support of that contention. It is apparent that Thompson at the time he executed the deed believed that under existing tax laws proceeds from the properties conveyed by said deed to the Trust were exempt from income taxes. Because of the long existing policy of Congress to exempt charitable trusts, including educational trusts, from income taxes, it would not be reasonable to expect a change in such a policy, particularly when such a policy has such a sound basis and benevolent purpose. As heretofore indicated, the income to the Trust from the property conveyed to it was not subject to income taxes at the time of the conveyance, and has not at any time since the date of such conveyance been subject to income taxes. Therefore, under the facts and circumstances of this case, I find and conclude that at the time the Thompsons conveyed the mineral interest that they conveyed to the Trust, as hereinabove mentioned, it could not reasonably be expected that the income from said property so conveyed would be subject to income taxes within ten years from the date of said conveyance and thereby cause the property conveyed to the Trust to revert to Thompson within ten years from the date of the conveyance.

In light of the findings and conclusions hereinabove made on the merits of Plaintiffs' action, insofar as they seek a recovery of the income taxes they allege were wrongfully assessed and collected for the years 1952 and 1954, the Internal Revenue Service was in error in charging as taxable income to I. W. Thompson and wife, Charlie Thompson, the oil and gas royalty income, attributable to the mineral interest conveyed by the Thompsons to the Trust, received by the Trust during the years 1952 and 1954 and was in error in refusing to allow the contribution in the amount of $1,209.71 made by the Thompsons to the Trust in 1954 as a tax deduction under the provisions of § 170 of the 1954 Internal Revenue Code (26 U.S.C.A. § 170). Therefore, the deficiency assessments made by the Internal Revenue Service and collected from the Thompsons for the years 1952 and 1954 to the extent that same were based on such erroneous determinations and actions were wrongfully made and collected.

7. Sec. 673 of the 1954 I.R.C. (26 U.S.C.A. § 673) contains a similar provision.

Under all of the findings and conclusions hereinabove made, judgment will be entered denying I. W. Thompson, as Trustee for Selected Minority Funds, a recovery; dismissing Plaintiffs' action insofar as same seeks a recovery of income taxes alleged to have been wrongfully assessed and collected for the years 1953, 1955 and 1956; overruling Defendant's Motion to Dismiss insofar as Plaintiffs' action seeks a recovery of income taxes wrongfully assessed and collected for the years 1952 and 1954; and allowing Plaintiffs I. W. Thompson and wife, Charlie Thompson, a recovery for the income taxes, penalties and interest wrongfully assessed against and collected from them for the years 1952 and 1954, as hereinabove found, with interest thereon as provided by law.

The parties having stipulated that in the event judgment is to be entered for the Plaintiffs, the amount of such judgment will be computed by the respective attorneys for the parties, the parties will be given thirty days from the date of this Memorandum Decision within which to prepare and file as a part of the record in this cause a stipulation as to the amount Plaintiffs I. W. Thompson and wife, Charlie Thompson, are entitled to recover in light of the findings and conclusions hereinabove made. Upon such a stipulation being filed, the attorney for Plaintiffs should prepare an appropriate form of judgment embracing the rulings herein announced and allowing Plaintiffs I. W. Thompson and wife, Charlie Thompson, a recovery in the amount set forth in the stipulation after such form of judgment has been presented to the attorneys for the Defendant for approval as to form. In the event the parties are unable to reach an agreement as to the amount of the recovery I. W. Thompson and wife, Charlie Thompson, are entitled to within the thirty-day period, the Court, upon being so advised by the parties, or either of them, will order a hearing for the purpose of determining the amount of the recovery.

As authorized by Rules 52, Federal Rules of Civil Procedure, 28 U.S.C.A.,

this Memorandum Decision, together with the stipulation, if any, made by the parties and filed herein as to the amount of recovery Plaintiffs I. W. Thompson and wife, Charlie Thompson, are entitled to under the findings and conclusions herein made, or in the absence of such a stipulation the findings made by the Court, after hearing, as to the amount Plaintiffs I. W. Thompson and wife, Charlie Thompson, are entitled to recover will constitute the Findings of Fact and Conclusions of Law in this cause.