**I. W. THOMPSON, Individually and wife, Charlie Thompson, et al., Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 20214.

United States Court of Appeals Fifth Circuit.

May 27, 1964.

A. A. White, Houston, Tex., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Carolyn R. Just, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before HUTCHESON and BROWN, Circuit Judges, and SIMPSON, District Judge.

JOHN R. BROWN, Circuit Judge.

I. W. Thompson, his wife Charlie Thompson, and I. W. Thompson, as Trustee for Selected Minority Funds [1] sued in the District Court to recover income taxes, penalties, and interest in the aggregate amount of $171,665.65, assessed against the Thompsons for the years 1952–1956 and collected by levy on the bank accounts of the Thompsons and Selected.[2]

On September 19, 1949, I. W. Thompson, referring to himself as Donor and naming himself as Trustee, executed an instrument establishing Selected. Subsequently the Thompsons executed a deed conveying to I. W. Thompson, Trustee, 9/10ths of all of the oil, gas and other minerals in and under approximately 86 acres of land in the Van Field in Van Zandt County, Texas. After June 1, 1951, the effective date of that deed, the oil and gas royalties attributable to the mineral interest conveyed were paid to Selected. Because the Thompsons did not consider the royalty income paid to Selected to be income accruing to them, they did not include this income in the returns filed by them for the years 1952–1956. The deficiencies assessed resulted from the determination by the Internal Revenue Service that the royalty amounts paid to Selected were taxable to the Thompsons.[3]

The Government challenged the jurisdiction of the District Court to entertain the refund suit involving the years 1953, 1955, and 1956 on the ground that the Thompsons had filed no claims for refund for those years. Acknowledging that claims had been filed for the years 1952 and 1954, the Government nevertheless, but unsuccessfully, challenged the jurisdiction of the District Court to entertain the refund suit for these years on the theory that the claims failed adequately to set forth the grounds relied on for relief. The Government further urged various substantive theories under which the income paid to Selected was taxable to the Thompsons. The District Court decided that Selected is a trust organized and operated exclusively for charitable or educational purposes and thus exempt from the payment of income taxes under Int.Rev. Code of 1954, § 501, 26 U.S.C.A. § 501. It rejected the Government's contentions that the royalty income was taxable to the Thompsons and that the claims were insufficient and thus rendered judgment for them for the years 1952 and 1954.[4] The Court dismissed the refund suit for the years 1953, 1955, and 1956, however, holding that the Thompsons had not filed refund claims for those years. The sole question here presented is the correctness of this dismissal.

1. Hereinafter referred to as Selected.

2.

| Year | Collected by Levy on Account of | |
|---|---|---|
| | Thompson | Selected |
| 1952 | $42,806.48 | $ |
| 1953 | | 49,153.40 * |
| 1954 | 30,863.50 | |
| 1955 | | 24,843.07 * |
| 1956 | | 23,999.20 * |
| | $73,669.98 | $97,995.67 |

* Note : The only items now in dispute.

3. The Internal Revenue Service determined a deficiency based on additional interest income of $1,740.50 for 1954 which the Thompsons agreed to and paid. The Service also disallowed a deduction of $1,209.71 in 1954 for a contribution to Selected. The District Court decided this issue in favor of Thompsons, and the Government has not appealed from this decision.

4. The Government has not appealed from these determinations.

■ Clearly the Code [5] and the Regulations [6] require the filing of a refund claim prior to the institution of a civil suit for refund. Neither the Thompsons nor Selected dispute this controlling principle of law; the difference— and therein the difficulty of this case— lies in its proper application.

The position of the Government may be simply stated. It is that, assuming that the "claims" in all other respects complied with the Code and Regulations,[7] those for the years here in question are fatally defective because on the line captioned "Name of taxpayer or purchaser of stamps" on Form 843 there appeared "Selected Minority Fund" rather than "I. W. Thompson and wife,

Charlie Thompson." The Government also urges that the statement of the ground upon which the refund was claimed was insufficient. We reject both contentions and reverse.

I.

■ The filing of a claim or demand as a prerequisite to a suit to recover taxes paid is a familiar provision of the revenue laws, compliance with which may be insisted upon by the Government. United States v. Felt & Tarrant Mfg. Co., 1931, 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025. The Supreme Court has said that "[o]ne object of such requirements is to advise the appropriate officials of the demands or

---

5. Int.Rev.Code of 1954, § 7422(a) provides:

"(a) No suit prior to filing claim for refund.—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof."

The 1939 Code, Int.Rev.Code of 1939, § 3772(a) (1), 53 Stat. 465, contained a like requirement.

6. Treas.Reg. § 301.6402–2 (1954), as amended, T.D. 6585, 1962–1 Cum.Bull. 290 provides:

"(a) Requirement that claim be filed. (1) Credits or refunds of overpayments may not be allowed or made after the expiration of the statutory period of limitation properly applicable unless, before the expiration of such period, a claim therefor has been filed by the taxpayer. Furthermore, under section 7422, a civil action for refund may not be instituted unless a claim has been filed within the properly applicable period of limitation.

"(2) The claim, together with appropriate supporting evidence, must be filed in the office of the district director for the internal revenue district in which the tax was paid. * * *.

"(b) Grounds set forth in claim. (1) No refund or credit will be allowed after

the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit. "* * *.

"(c) Form for filing claim. Claims by the taxpayer for the refunding of overpayment of taxes, interest, penalties, and additions to tax shall be made on Form 843. * * *.

"(d) Separate claims for separate taxable periods. In the case of income, gift, and Federal unemployment taxes, a separate claim shall be made for each type of tax for each taxable year or period."

Substantially identical provisions appeared in the Regulations under the 1939 Code. Treas.Reg. § 39.322–3.

7. The Thompsons filed a separate claim on Form 843 for each year in question within the applicable period of limitation in the office of the district director for the internal revenue district in which the tax was paid, setting forth in each a verified statement of the ground upon which the refund was claimed, all as required by the Regulations. See note 6, supra.

claims intended to be asserted, so as to insure an orderly administration of the revenue * * *." Id. at 283 U.S. 272, 51 S.Ct. 377. We have said more specifically that the purpose of the rule is to permit the Commissioner to correct claimed errors in the first instance and, if disagreement persists, to limit the litigation to the issues which have been reexamined by the Commissioner and which he is prepared to defend. Carmack v. Scofield, 5 Cir., 1953, 201 F.2d 360, 362; Snead v. Elmore, 5 Cir., 1932, 59 F.2d 312, 314.

■ A brief consideration of the peculiar facts of this case demonstrates that these important policies are not undermined by our decision for the Thompsons.

The 5 claims in issue in the Court below were transmitted in one bundle to the proper district director. Each claim showed the year for which it was made, the amount claimed as a refund, and the date the amount claimed as a refund was paid. The claims for the years 1952 and 1954 showed "I. W. and/or Charlie Thompson" as taxpayer and were sign-ed by I. W. Thompson and Charlie Thompson. The claims for the years 1953, 1955, and 1956 showed "Selected Minority Fund" as taxpayer and were signed "Selected Minority Fund by I. W. Thompson, Trustee." But with the receipt on March 27, 1959 of this bundle of refund claims, the district director had full and complete information. The bundle of claims themselves presented a full picture of the events which had transpired with relation to the Thompsons for the years 1952–1956.[8] It is clear from the claims that each of the 5 consecutive years involves a dispute with I. W. Thompson. The amount shown on each claim as having been assessed is the amount shown on the notice of levy and receipt for payment of taxes for the corresponding year. Likewise the date of payment shown on each claim is the date on which the bank issued its cashier's check in payment of the levy for the corresponding year. The same ground was set forth in the claims for the years 1952 and 1954, and it closely corresponded to the ground set forth in the claims for the years 1953, 1955, and 1956.[9] More than that, the

8. The following information was obtainable by reference to the claims alone:

| Year | Assessed Amount | Date of Payment | Taxpayer per Form 843 | Form 843 Signed By |
|------|-----------------|-----------------|------------------------|---------------------|
| 1952 | $42,806.48 | 7/30/58 | I. W. and/or Charlie Thompson | I. W. Thompson Charlie Thompson |
| 1953 | 49,153.40 | 8/ 8/58 | Selected Minority Fund | Selected Minority Fund I. W. Thompson, Tr. |
| 1954 | 30,863.50 | 7/30/58 | I. W. and/or Charlie Thompson | I. W. Thompson Charlie Thompson |
| 1955 | 24,843.07 | 8/ 8/58 | Selected Minority Fund | Selected Minority Fund I. W. Thompson, Tr. |
| 1956 | 23,999.20 | 8/ 8/58 | Selected Minority Fund | Selected Minority Fund I. W. Thompson, Tr. |

9. The statement of the 1952/1954 ground was as follows:

"The claim indicated herein is without cause. All royalty payments for the year indicated were paid directly to Selected Minority Funds authorized by Deed of Record. Payments directly to these trust accounts automatically became $1,000 trusts untaxable. This levy was unjustified in two ways."

Essentially the same legal theory was asserted in a slightly different language in the 1953/1955/1956 claim:

"The claim above indicated herein

Director had with these claims his own files which included them. Included were the Director's file of the Thompsons' tax returns for the years 1952–1956. That also included the Internal Revenue Agent's report covering his examination and investigation of those returns, and a copy of the essential excerpts from the trust instrument by which Selected was created. From these documents the Director knew the essential provisions of the trust, that the Thompsons had not included in their returns for those years the royalty income paid to Selected on the theory that it was tax-exempt income of Selected rather than income to them, and that the deficiencies assessed for each of those years came about from the determination of the Service that the income was taxable to the Thompsons rather than to Selected on the theory that Selected was not a valid educational trust. Thus the record reflects that in the light of the facts before and then known to the Director at the time the claims were received, he was sufficiently advised as to the identity of the taxpayer seeking refund for taxes wrongfully assessed and collected for the years 1953, 1955, and 1956.

In returning them the District Director's action was similarly without any discriminating distinction. The claims for all 5 years were bundled up and sent back to I. W. Thompson in one envelope, under one cover letter. It is true, of course, that the Director returned the claims with the request that they be filed in the exact name shown on the original return. But to lump 1952 and 1954 with these other years (1953, 1955, 1956) was an error. That error is graphically demonstrated by the District Court's determination adverse to

the Government but from which it did not appeal.

This holding in no way brings into question the Supreme Court's rejection in Angelus Milling Co. v. Commissioner, 1945, 325 U.S. 293, 299, 65 S.Ct. 1162, 89 L.Ed. 1619, of the taxpayer's contention that the Commissioner is charged with knowledge of all he might learn from his vast files. Here the Director treated all together. All of the information was physically together and substantively related. He did not have to look elsewhere "somewhere under the Commissioner's roof * * *" for "information which might enable him to pass on [the] claim for refund." 325 U.S. 293, 299, 65 S.Ct. 1162, 1165. It was all there. The Director did not have to look *for*. All he had to do was look *at*.

Under the circumstances of this case we hold that claims were filed for the years 1953, 1955, and 1956.[10]

## II.

Whatever doubt there might be in the unitary treatment of the refund claims for the 5 years as a sufficient basis for upholding the validity of the claims discussed in Part I, we would nevertheless be forced to hold with the Thompsons for another reason. The notice of levy served on the bank for the years 1953, 1955, and 1956 was on the usual Form 668–A.[11] In the blank space following the printed statement, "You are hereby notified that there is now due, owing, and unpaid from NAME AND ADDRESS OF TAXPAYER," there was inserted the following: "Selected Minority Trust by I. W. Thompson, Route 3, Grand Saline, Texas." The account of Selected was levied upon to satisfy the tax stated to be due by

---

against the Selected Minority Trust is unjustified in one all-sufficient way. By authority of the trust and deeds creating them, all royalty checks automatically became $1,000 untaxable trusts, not a part of one trust, and without income and only one purpose to serve. They have persistently tried to serve that purpose."

10. Whether the claims sufficiently stated the reason for the requested refund is another question resolved in Part III.

11. Form 668-A is the official form of the U. S. Treasury Department—Internal Revenue Service entitled "NOTICE OF LEVY."

Selected for each of these years. Mr. Thompson, with his rural upbringing and 82 years, apparently thought that he could follow the Government's lead. He did it precisely, deliberately, and with discrimination. Thus, for the years 1952 and 1954 he filed claims in the name of I. W. and Charlie Thompson. He did this because on the Notice of Levy for those years they were shown as Taxpayer and the levy was satisfied out of their personal funds. (See Note 2, supra.) On the other hand, for the years 1953, 1955, and 1956, he filed claims in the name of Selected because Selected, not the individual Thompsons, was shown as Taxpayer.

The Government for the purposes of levy and collection of the taxes here in question denominated Selected as taxpayer. The money representing the taxes was collected from Selected and no one else. We think Selected, and the Thompsons for it, was entitled to accept this designation of it as the taxpayer whatever might be its technical position as the one from whom a tax is owing.[12] We hold merely that the claims filed in the name of Selected under the circumstances of this case were sufficient claims to meet the condition precedent laid down by the Code and regulations [13] for the filing of this refund suit.

### III.

Having established that a claim was filed for the years 1953, 1955, and 1956, we now face the remaining question of the sufficiency of the claims insofar as they—in the words of the regulations—"[are required to] set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." The text of the ground in the claims for these years does not differ significantly from the text of the ground held sufficient by the District Court for the years 1952 and 1954,[14] and the Government does not appeal from that determination. However, the District Court did not address itself to the sufficiency of the ground stated in the 1953/1955/1956 claims because of its ruling that no claims had been filed at all by the proper person for those years.

As we pointed out in Carmack v. Scofield, 5 Cir., 1953, 201 F.2d 360, 361–362 and reiterated in United States v. Henderson Clay Prod., 5 Cir., 1963, 324 F.2d 7, 17, "the principal requirement of the statute * * * and regulations supplementary thereto, is that the Commissioner be apprised by the timely filing of a claim of the exact basis upon which the claim for a refund is predicated." Perhaps the statement [15] of the ground—if viewed as an isolated paper—would not be very informative. But in the full context in which it appears it clearly expresses the legal theory on which Thompsons excluded from their income the royalty payments made to Selected in the first place; namely, that the income was attributable to the mineral interest which they had conveyed to Selected,

---

12. The word "taxpayer" is defined in Int. Rev.Code of 1954, § 7701(a) (14):

    "*Taxpayer.*—The term 'taxpayer' means any person subject to any internal revenue tax."

    The Thompsons make a strong argument that Selected was certainly "subject to" a tax, either directly or as a transferee of identifiable income. Status as one subject to a tax need not necessarily require unquestioned liability for it. That might turn on intricate legal-factual questions, e. g., status as a charitable trust, etc.

13. The relevant provisions of the Code and regulations are set forth in notes 5 and 6, supra.

14. The text of the ground for each group of years is set out in note 9, supra.

15. "The claim above indicated herein against the Selected Minority Trust is unjustified in one all-sufficient way. By authority of the trust and deeds creating them, all royalty checks automatically became $1,000 untaxable trusts, not a part of one trust, and without income and only one purpose to serve. They have persistently tried to serve that purpose."

an educational or charitable trust. This theory was clearly recognized in the preliminary statements prepared by the Service after the audit of the returns, and the rejection of the theory formed the basis for the deficiencies determined for all 5 years. This precise theory was asserted by the Thompsons in the refund suit. Under the circumstances of this case, including the handling of the claims in one bundle as previously indicated, we hold that the refund claim for the years 1953, 1955, and 1956 was sufficient to support the complaint within the principles announced by this Court in United States v. Henderson Clay Prod., 5 Cir., 1963, 324 F.2d 7; Hartley v. United States, 5 Cir., 1958, 252 F.2d 262; Burrell v. Fahs, 5 Cir., 1956, 232 F.2d 163.

For the foregoing reasons, the judgment of the District Court insofar as it dismissed the complaint related to the years 1953, 1955, and 1956 is reversed, and the case remanded for further and not inconsistent proceedings.

Reversed and remanded.

HUTCHESON, Circuit Judge (concurring).

It is clear to me that the law of income taxation is one branch of the law where equity and justice, as distinguished from strict law, have little place and that when one is given a statutory right to sue for a refund, he must bring himself within the reach of that right. It is certainly true that the courts have settled it that a claim for refund showing specifically the what and why of the claim must be filed by the taxpayer before he can sue for a refund. It is also true that substance must prevail over form and that an approach which, like that of the scribes, Pharisees and hypocrites, tithes mint, anise and cummin and leaves unconsidered the weightier things of the law, is not acceptable. I, therefore, am delighted to concur in the statesmanlike opinion of my brother, Brown, in this case which it seems clear to me is, under the undisputed evidence, in full accordance with the substance and right of the case.

SIMPSON, District Judge (dissenting).

With deference to the views of the majority and to the theory skillfully developed in Parts I and II of Judge Brown's Opinion that jurisdiction exists, I think that the District Judge, for the reasons set forth in his opinion (209 F.Supp. 530, at page 537) was correct in his determination that he was without power or authority to entertain this action with respect to the claims for the years 1953, 1955 and 1956.

I do so with deference also to Judge Hutcheson's suggestion that a dissent will align me, not only with the District Judge and the tax-gatherers, but also with the scribes, Pharisees and hypocrites. (See, Matthew XXIII, 23–25).

If it is appropriate to cite Chapter and Verse, I suggest turning to Mark XII, 14–17, and the admonition of the 17th Verse, "Render to Caesar the things that are Caesar's, and to God the things that are God's." (See also, Luke XX, 24–25.)

The tax-gatherers were omnipresent and omnivorous two thousand years ago, as they are now, and as little concerned with "weightier things of the law, judgment, mercy and faith." (Matthew XXIII, 23, supra.)

Sadly, the *taxpayers*, for the years in question, never filed a refund claim. In my view, this is fatal to jurisdiction, as the Court below held.

I respectfully dissent.