**C. Ed. HACKENDORF, d/b/a Sun Bearing Supply, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 5445.**

United States Court of Appeals Tenth Circuit.

April 5, 1957.

Rehearing Denied May 28, 1957.

R. F. Roberts, Beaumont, Tex. (S. J. Clendenning, Tulsa, Okl., on the brief), for appellant.

Earl E. Pollock, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Walter Akerman, Jr., Attys., Department of Justice, Washington, D. C., and B. Hayden Crawford, U. S. Atty., for Northern District of Oklahoma, Tulsa, Okl., prepared the brief), for appellee.

Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

The plaintiff was engaged in the business of reconditioning or rebuilding automobile motors for sale. He brought this action to recover a manufacturers' excise tax alleged to have been erroneously assessed and collected under the provisions of § 3403(c) of the Internal Revenue Code of 1939, as amended, 26 U.S.C.A. § 3403(c), and § 4061(b) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 4061(b), during the period beginning November 1, 1952, through March 1955. This is an appeal from a judgment holding the sales were subject to the manufacturers' tax provided for in the statute.

Relying upon decisions distinguishing manufacturing or reconstruction from repair in other types of cases, plaintiff vigorously insists that he does no more than replace worn out automobile parts for the purpose of preserving the motors as a whole.[1] In other words, he says that by his process he replaces only worn out essential parts to preserve a machine which is a combination of parts. In applying the statutes, we think the contention is untenable.

The facts are not in dispute. During the period in question the plaintiff acquired old automobile motors which had ceased to function efficiently or to function at all. In some instances the motors were purchased from automotive salvage companies, but most of them were acquired through trade-in allowances from his wholesale customers when purchasing rebuilt motors. In the process of rebuilding, the motors were completely dismantled and the component parts thoroughly cleaned. The different parts were then inspected and placed in compartments containing parts from the same type and make of motors. The

---

[1]. Typical of these cases are Wilson v. Simpson, 9 How. 109, 50 U.S. 109, 13 L.Ed. 66; Hartranft v. Wiegmann, 121 U.S. 609, 7 S.Ct. 1240, 30 L.Ed. 1012, and General Motors Corp. v. Preferred Elec. & Wire Corp., 2 Cir., 79 F.2d 621, certiorari denied 296 U.S. 655, 56 S.Ct. 381, 80 L.Ed. 466.

motor blocks, crankshafts, valves and connecting rods were machined with special equipment. Plaintiff's reworking operations consisted of resurfacing of the cylinder walls by reboring the block, resurfacing of the crankshaft journals, valves, valve seats and connecting rods with emery wheels and honing stones. There were new bearings in all motors. No attempt was made to replace salvaged parts in the same block from which they were taken. The parts were used on an assembly line in the production of rebuilt motors.[2] When the motors were reassembled, parts which were worn to the extent that they were unusable were replaced by new parts upon which the tax had been paid. The finished product was sold at a fixed price for each model and the taxpayer gave a new motor warranty to the purchaser. The sales averaged 85 or 90 motors per month.

Section 3403 of the Internal Revenue Code of 1939, as amended, provides that "There shall be imposed upon the following articles sold by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold: * * * (c) Parts or accessories (other than tires and inner tubes and other than radio or television receiving sets) for any of the articles enumerated in subsection (a) or (b), * * *." Subsections (a) and (b) refer to automobiles. § 4061 of the 1954 Internal Revenue Code is to the same effect. § 316.4 of Treasury Regulation 46 (1940 Ed.), defines a manufacturer to include "a person who produces a taxable article from scrap, salvage, or junk material, as well as from new or raw material, (1) by processing, manipulating, or changing the form of an article, or (2) by combining or assembling two or more articles. Administrative rulings are to the same effect.[3]

The courts have generally held that rebuilding automobile parts such as armatures, generators, and connecting rods for sale constitutes manufacturing with-

2. As to plaintiff's process, the trial court made these findings:

"6. Sun completely disassembles the old engines that it acquires, cleans and degreases the various components, and then inspects those components to determine which are salvageable. Since Sun uses new pistons, new bearings, and timing chains in its rebuilt engines, those components of the old engine are invariably discarded. In addition the condition of any one or more of the other components of the old engine may be such as to require discard.

"7. Salvageable blocks, crankshafts, valves, and, in most instances, connecting rods obtained by Sun from old engines are machined or rebuilt by Sun with specialized equipment to make them useable, (sic) as follows: The blocks are bored to give the cylinders a uniform size, the valve ports are refaced or reseated, and cracks in the block are cold welded. The crankshaft bearing surfaces are reground. Connecting rods for most of the rebuilt engines produced by Sun are reground. Valves are refaced. Other components of the engine, if salvageable at all, do not require machining before use.

"8. The parts salvaged by Sun from its old engines and the new parts purchased tax paid by Sun are placed in separate storage bins according to type. Sun then produces rebuilt engines on an assembly line utilizing salvaged parts and newly manufactured parts. Salvaged parts do not customarily go back into the engine block from which they may have originated.

"9. With the exception of the camshaft, and in some model engines, the connecting rods, every major component of Sun's rebuilt engines is either a newly manufactured part that has been purchased tax paid by Sun or is a salvaged part that Sun has machined in order to make useable (sic).

"10. The rebuilt engines produced by Sun are a new and different article from the old engines which it has used as a source of salvageable parts."

3. Treasury Rev.Rul. 54–329, 1954–2 Cum.Bull. 405, defined a "manufacturer" as a person who was engaged in the production of rebuilt auto parts or accessories for sale or for use in further manufacture of other articles for sale, as follows:

"(2) *Rebuilding.*—Reboring or other machining, rewinding, and comparable major operations performed on used parts being processed for sale or for use as components of other articles for sale are defined as rebuilding operations constituting manufacture for purposes of the tax. The person owning parts being rebuilt for such disposition is the rebuilder (manufacturer) and is liable

in the meaning of the statute, and sales of the rebuilt products are subject to the manufacturers' tax. Clawson & Bals v. Harrison, 7 Cir., 108 F.2d 991, certiorari denied 309 U.S. 685, 60 S.Ct. 808, 84 L. Ed. 1028; United States v. Armature Exchange, 9 Cir., 116 F.2d 969, certiorari denied 313 U.S. 573, 61 S.Ct. 960, 85 L. Ed. 1531; United States v. J. Leslie Morris Co., 9 Cir., 124 F.2d 371; United States v. Moroloy Bearing Service of Oakland, Ltd., 9 Cir., 124 F.2d 373; United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589; Clawson & Bals v. United States, 7 Cir., 182 F.2d 402, certiorari denied 340 U.S. 883, 71 S.Ct. 197, 95 L.Ed. 641;[4] Monteith Bros. Co. v. United States, 7 Cir., 142 F.2d 139; Broad Motors Co. v. Smith, D.C., 86 F.Supp. 4. There is no material difference in the rebuilding of armatures, generators, and connecting rods, and in rebuilding motors. Each is made up of component parts which are reworked or replaced when necessary. The end product in either case is a finished part of an automobile ready for installation. Furthermore, it appears that Congress expressly recognized that rebuilt automobile parts are subject to the manufacturers' tax by refusing to exempt specifically such rebuilt parts. In considering the Revenue Bill of 1941, the Senate Finance Committee reported as follows:

"It was urged that this section be amended to specify that repaired, reconditioned, and rebuilt automobile parts and accessories are not subject to the 'parts and accessories' tax. Your committee examined the problem very carefully. Repaired and

for the tax on his sales of the rebuilt parts or on their use as components of other articles manufactured by him for sale. The tax applies whether the machining, etc., operations are performed by the rebuilder himself or by some other person in his behalf.

"The manufacturers' excise tax applies to the rebuilder's sale of (a) rebuilt batteries, (b) rebabbitted or machined connecting rods, (c) resurfaced clutch plates, (d) rewound armatures, (e) reground or remetalized crankshafts, (f) engines in which blocks are machined (e. g., cylinders rebored, new sleeves inserted, with or without cylinders being rebored) or new blocks installed, and (g) similar parts on which machining, rewinding, or comparable operations are performed.

"The tax due upon the sale of a rebuilt part is based upon the price for which such part is sold, excluding the value of a like part accepted in exchange. The tax due on the use of a rebuilt part as a component of another article manufactured by the rebuilder for sale is based upon the price for which such or similar rebuilt parts are sold in the ordinary course of trade, excluding the value of a like part accepted in exchange. Where a taxpaid part is used as a component in the manufacture of the rebuilt part, appropriate relief through refund or credit may be obtained pursuant to the provisions of section 3443(a) (1) of the Code."

4. In the case of Clawson & Bals v. United States, 182 F.2d 402, 405, the court said:

"The plaintiff contends that its reconditioning of these rods did not amount to 'rebuilding' but only to 'repairing.' The Merriam-Webster New International Dictionary defines 'rebuild' as 'To build again or to construct anew, usually the parts that are in good condition and some new parts being used.' The reconditioning done by plaintiff would seem to fit this definition. Plaintiff's attempt to distinguish between 'rebuilding' and 'repairing' was not convincing. The dictionaries give 'repair' as one of the synonyms of 'rebuild.' We think the common use of 'rebuild' is the making of such extensive repairs on an object as to make it again useful for a period, almost as if it were new.

"However, regardless of the exact definition of 'rebuild', the above quotation from the Senate Finance Committee had reference to the very type of reconditioning we are here considering. They there called such reconditioned parts 'rebuilt' parts and said they should be subject to the same tax as new parts.

"This statement by the Senate Finance Committee is significant. It discloses that the attention of Congress had actually been called to some of the cases which we have cited above and that Congress had accepted these decisions as correctly interpreting the Congressional intent on this matter. This constitutes Congressional ratification of the interpretation of this Section by the courts and should be considered just as binding on the courts as if such reconditioned parts were expressly included in the Act."

reconditioned parts are not now subject to tax. There are several decisions of the United States circuit courts of appeals holding rebuilt parts and accessories to be subject to the manufacturers' tax. Rebuilt parts compete with new parts, and it appears appropriate that they should be subject to the same tax. Accordingly, no change has been made." S.Rep. No. 673, Part 1, 77th Cong., 1st Sess., p. 48.

Automobile motors, whether new or rebuilt, are single functional units and are usually sold as such for installation in motor vehicles. They are a necessary "part" of an automobile and taxable if manufactured and sold. It is unimportant that they may be made up of component parts which are subject to the tax if sold separately. The statute provides that if taxable component parts are used in manufacturing or producing a taxable part, a credit shall be allowed.

Judgment affirmed.