Mike AUSTFORD, Appellant,

v.

Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Appellee.

Nos. 16665, 16666.

United States Court of Appeals
Eighth Circuit.

June 29, 1961.

Mart R. Vogel, Fargo, N. D., made argument for the appellant; Philip B. Vogel, Fargo, N. D., was on the brief for appellant.

Beate Bloch, Atty., U. S. Dept. of Labor, Washington, D. C., made argument for appellee. Charles Donahue, Solicitor of Labor, and Bessie Margolin, Asst. Solicitor of Labor, Washington, D. C., and Harper Barnes, Regional Atty., Dept. of Labor, Kansas City, Mo., were with Beate Bloch, Washington, D. C., on the brief.

Before JOHNSEN, Chief Judge, and WOODROUGH and MATTHES, Circuit Judges.

WOODROUGH, Circuit Judge.

These two actions, which were consolidated for trial, were brought by the Sec-

retary of Labor[1] under the Fair Labor Standards Act of 1938, as amended. (29 U.S.C.A. § 201 et seq.) No. 16,665 was under Section 17 of the Act to enjoin defendant employer from violating the Act's overtime requirements. No. 16,666 was under Section 16(c) of the Act to recover unpaid wages for overtime pursuant to the written requests of appellant's employees, Don A. Shambaugh, Keith G. Shambaugh and Richard Shambaugh.

There was evidence that appellant, Mike Austford, operates a road construction business from his home in Pembina County, North Dakota, employing between six and nine employees as gravel truck drivers, caterpillar tractor operators, sand and gravel pit operators, and in machine maintenance and shop repair. Appellant and his employees worked on township, county and, in, some instances, state roads, located in the county. These roads included North Dakota Highway No. 32 which runs in a north-south direction from the Canadian border to the South Dakota State line; Pembina County Highway No. 1 which joins State Highway No. 18 that also runs the length of the state; Pembina County Highway No. 3 which runs east-west between State Highway Nos. 18 and 32; and Pembina County Highway No. 55 which connects State Highway No. 18 with State Highway No. 32 and with United States Highway No. 81, the latter extending from the Canadian border to the city of Laredo on the Mexican border.

The map of Pembina County shows that all of the roads in the county, including the other roads worked on by appellant's employees, formed a network, in which each individual road is connected, either directly or indirectly through other roads, to one or more of these highways. The employees dump the gravel on the roads with a dump truck, and it is then bladed either by the county or by the employees. Appellant's work is performed primarily on dirt and graveled roads, although some of the roads were later paved with a hard surface. Not only are the roads worked on by appellant's employees inter-connected with other roads joining the interstate highway system, but the undisputed evidence shows that the particular township, county and state roads here involved were, and are, used for the movement of goods in interstate commerce, as follows:

1. By the United States Post Office Department in the delivery of mail over roads worked on by appellant in Pembina County from points outside the State of North Dakota;

2. By the interstate carriers in the delivery of commodities in interstate commerce evidenced by testimony of the owner of a film delivery service, who delivered film from the terminal in South Dakota to movie theaters in Pembina County, and a carrier who hauled interstate freight over some of the roads worked on by appellant, both of whom were licensed as interstate carriers by the Interstate Commerce Commission;

3. By area farmers to transport agricultural products from farm to shipping point, following which most of the products were shipped to points outside of North Dakota based upon testimony of an associate agricultural economist with the North Dakota Experimental Station in Fargo, who testified that substantially all of the wheat, rye, flax and potatoes raised in Pembina County are marketed outside the State of North Dakota, grains generally being carried by truck from the farm to a local elevator for cleaning or treatment, prior to shipment outside the state, and potatoes being delivered by truck by the farmer to a potato warehouse, where they are cleaned and then shipped outside the state. The manager of the Agricultural Stabilization and Conservation Office in Pembina County testified that the sugar beets harvested in the county are hauled by the farmers to four loading stations, from which the railroads transport them to the sugar refineries located in Minnesota and surrounding states.

1. Arthur J. Goldberg was substituted as appellee in the place of James P. Mitch- ell, former Secretary of Labor, by order of this Court, dated January 30, 1961.

The three employee-claimants in case No. 16,666 also testified about the road work they performed while working for appellant in 1957 and 1958. Frank Gerlach, a Wage-Hour investigator, then presented computations, which were not disputed, about the amount which these employees would have received if they had been compensated in accordance with the Act's requirements. Appellant testified that he had begun paying his employees one and one-half times the base pay for work in excess of forty hours per week in the spring of 1959. The Wage-Hour investigator testified that at the conclusion of his investigation toward the latter part of January, 1959, appellant stated that he would comply with the Act in the future, but in a subsequent discussion, appellant "was indefinite as to whether or not he would comply" and that "on advice of an attorney he apparently had changed his mind."

On the basis of its findings of fact the trial court concluded that the roads worked on by appellant and his employees were instrumentalities of interstate commerce, and that the employees were therefore "engaged in commerce" under the Act. Accordingly, the court issued an injunction in No. 16,665 and having concluded that the "issue of law" in the case was "settled finally by the courts," awarded judgment in No. 16,666 for unpaid overtime compensation found due the three employee-claimants.

### 1.

■ On the first contention attacking the Act's coverage of repair and maintenance of the county and township dirt and gravel roads wholly within Pembina County, we think the district court's ruling was in conformity with the decision of this Court in Mitchell v. Brown, 8 Cir., 224 F.2d 359, certiorari denied 350 U.S. 875, 76 S.Ct. 119, 100 L.Ed. 773. In that case we upheld the Act's coverage of employees of a professional or consulting engineer engaged in the preparation of plans and specifications and providing inspection service for projects which included the paving of streets in certain towns in Iowa. It was obvious that the streets in that case primarily served intrastate purposes, but they carried persons and goods that were passing between states and we recognized them to be instrumentalities of interstate commerce. In the present case, the roads appellant and his employees worked on served the same purposes and we think they likewise were such instrumentalities.

In Mitchell v. Brown, supra, we cited and relied upon Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 497, 87 L.Ed. 656, which establishes that the Act covers employees engaged in the operation, maintenance or repair of "[v]ehicular roads and bridges  *  *  * used by persons and goods passing between the various States  *  *  * are instrumentalities of interstate commerce." The Supreme Court also stated quoting Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, "It is clear that the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the channels of interstate commerce." And it is not material that the roads are not themselves interstate highways but are feeders or extensions within the reaches of the main channels.

The Overstreet case involved a privately owned and operated toll road and bridge located wholly within the bounds of Duval County, Florida, and was used primarily for local traffic since it led only to a village with a population of approximately one hundred citizens. The district court had denied coverage of the employees engaged in its operations and maintenance, because of the view expressed in Covington & Cincinnati Bridge Co. v. Com. of Kentucky, 154 U.S. 204, 14 S.Ct. 1087, 38 L.Ed. 962, that the business of operating a toll bridge over which interstate and foreign commerce traveled was not immune from state taxation as interstate business. The Supreme Court reversed the judgment and after remand, the Court of Appeals, in affirming the judgment entered for the employees, pointed out that the Supreme Court's coverage ruling was "based upon the fact

of interstate use rather than upon the extent of such use" and held it determinative that the toll road was "an instrumentality * * * over which goods and persons in interstate and intrastate movements alike are being transported" and is "open and available at all times for interstate use." North Shore Corp. v. Barnett, 5 Cir., 143 F.2d 172, 174. This characterization equally describes the roads on which appellant's employees worked.

Other courts have consistently found Overstreet v. North Shore Corp., supra, decisive of the Act's coverage of repair and maintenance work on county and rural roads and reconstruction of existing interstate facilities. In Emulsified Asphalt Products Company v. Mitchell, 6 Cir., 222 F.2d 913, 914, upholding the Act's coverage of employees of an asphalt producer supplying material for use on city, town and county streets and roads, rejected the employer's argument that roads built primarily for local traffic were not instrumentalities of commerce, since the Supreme Court had held, in Overstreet, that "if vehicular roads and bridges 'are used by persons and goods passing between the various States, they are instrumentalities of interstate commerce.'" Similarly, in Mitchell v. Raines, 5 Cir., 238 F.2d 186, 187, the court held that evidence showing that roads "were regularly used in the transmission of United States postal matter and for the transportation of goods to and from points in Georgia and other states [positively established] [t]heir character as direct instrumentalities of interstate commerce * * *." In Walling v. McCrady Const. Co., 3 Cir., 156 F.2d 932, certiorari denied 329 U.S. 785, 67 S.Ct. 298, 91 L.Ed. 673, the court held the Act applicable to employees engaged in the maintenance, repair and reconstruction of county roads and streets as various interstate instrumentalities, including a city street only twelve blocks long, used primarily for local traffic which did not even bear designation as state highways and relocation of a portion of a county road.

The most recent decision, Quilichini v. Kelley, D.C., 176 F.Supp. 889, 891, held there was coverage under the Act for employees engaged in the new construction of sections of rural secondary roads in Puerto Rico. The court upheld coverage although it found, "[t]he roads involved are not the super-expressway type of highway * * *. Indeed, not only are they of a most secondary class, one of them, Road No. 157, is not completed in one section, and in the other section comes to a dead end. Not even the ubiquitous United States mail uses it as a route. Only raw coffee beans and truck farming crops go over it. No industrial establishments grace its side." In Compania De Ingenieros y Contratistas, Inc. v. Goldberg, 1 Cir., 289 F.2d 78, 80, the court recites the following facts as affording adequate support for the court's holding that the employees constructing these roads are covered by the Act:

"[E]ach of the roads involved in these two cases was through areas producing at least some agricultural products which were transported, sometime after processing, in interstate commerce. The transportation of such products from areas alongside and near the roads * * * was generally over other roads which connect or would connect with the roads here involved. * * * '[S]aid roads * * * [were] joined to and formed a part of the road and highway system of the Commonwealth of Puerto Rico and * * * over those roads to which said roads * * * [were] joined, there was such [interstate] trade, commerce, transportation, transmission and communication.'"

Among the many other decisions applying the Overstreet principles in varying fact situations comparable to the present one, we consider the following to be pertinent: Crook v. Bryant, 4 Cir., 265 F.2d 541, 543, holding that the West Virginia Turnpike, although "a limited access toll road * * * used by vehicles traveling interstate, not by necessity but for convenience only, * * * [nevertheless] is a connecting link of the system of interstate highways and thus serves as an instrumentality of interstate commerce";

238

Walling v. Craig, D.C., 53 F.Supp. 479, 480, holding the Act applicable although "each section of public road or highway repaired, maintained or reconstructed by defendants and their employees * * * lies wholly within a single State but each of said sections was a part of a network of roads and highways regularly traversed by vehicles operated by common and contract carriers and private persons for the transportation of persons and property from one State to another * * *"; Mitchell v. L. Antonsanti, Inc., 14 WH Cases 398, 38 L.C. (CCH) para. 65,922 (D.P.R.1959, not officially reported), where two city streets within the municipality of San Juan were held to be instrumentalities of interstate commerce; and Mitchell v. Stewart Brothers Construction Co., D.C., 184 F.Supp. 886, 889, where the court recognized that, "[c]onsidering the integrated road system and great mobility of motor vehicles of today, it would be difficult to find a road which is well-traveled at all, that would not be deemed an instrumentality of interstate commerce."

We think the authorities support the trial court's conclusion that the roads here involved, in view of their proven use for the movement of persons and commodities "passing between the various States," are instrumentalities of interstate commerce, so that appellant's employees, engaged in their maintenance and repair, are "engaged in commerce" [187 F.Supp. 920] within the coverage of the Fair Labor Standards Act. Mitchell v. C. W. Vollmer and Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196; J. F. Fitzgerald Construction Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; and McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538.

**2.**

Section 16(c)[2] limits the Secretary's authority to bring suit on behalf of an employee for the recovery of unpaid wages to cases in which the issues of law have been "settled finally by the courts." The two appellate courts which have had occasion to discuss this proviso have pointed out that an "extreme and unreasonable" insistence upon "pre-existing judicial precedents squarely in point" would "virtually nullify the salutary provision for the recovery of unpaid compensation without expense to the claimant."

The differences between the situation in the present cases and the cases in which the meaning and scope of the Act have been determined are differences between a paved road and a graveled road or between a township road and a private toll road or a town street, all of which carry person and goods passing from one state or county to another state in interstate commerce and present no difference in legal principle. The differences are not legally significant since they were merely incidental factual variations such as obtained between any two cases however alike as to the fundamental principle which controls their disposition.

In Mitchell v. Emala & Associates, Inc., 4 Cir., 274 F.2d 781, the court held that the difference between fill dirt and other man made material used in road construction did not bring into play the proviso of Section 16(c) of the Fair Labor Standards Act. The issues of law in the present cases appear to us to have been "settled finally" if not conclusively, by Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656, and at least more than five years ago by this Court in Mitchell v. Brown, 8

2. Section 16(c) provides: "* * * When a written request is filed by any employee with the Secretary of Labor claiming unpaid minimum wages or unpaid overtime compensation under section 206 or section 207 of this title, the Secretary of Labor may bring an action in any court of competent jurisdiction to recover the amount of such claim: Provided, That this authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled."

Cir., 244 F.2d 359, subject only to their application to ever varying factual situations.

### 3.

Appellant asks this Court to reverse the trial court's issuance of an injunction as an abuse of discretion, because defendant has come into compliance with the Act. However, appellant concedes that he has complied with the Act under the pressure of administrative investigations "and because he had to compete for employees in Pembina County's labor market" and not "because he felt he was under the Fair Labor Standards Act." Under these circumstances, the grant of injunctive relief was clearly an appropriate exercise of the discretion vested in the trial court. As this Court held, in Chambers Construction Co., v. Mitchell, 8 Cir., 233 F.2d 717, 725, "[w]here the violation established is likely to resume, the court should grant an injunction." In Compania De Ingenieros y Contratistas, Inc. v. Goldberg, 1 Cir., 289 F.2d 78, 81, the court, under circumstances similar to those presented here, affirmed the trial court's grant of injunctive relief "[i]n view of the admitted intent of defendants to continue in the business of highway construction in the future and of the possibility on similar future construction of asserting the same argument that the construction is not covered by the Act * * *."

In Goldberg v. Kickapoo Prairie Broadcasting Co. et al., 8 Cir., 288 F.2d 778, 783, this Court held that it was error for the trial court to deny injunctive relief, observing that "injunctive relief is not punitive but remedial—if defendants 'comply with the law they lose nothing by the injunction.'" It was clearly a sound exercise of the court's discretion to grant such remedial injunctive relief here, where appellant, having come into temporary compliance only because of outside pressures, still refuses to acknowledge the long line of judicial authorities which have established the Act's applicability to his operations.

### 4.

Appellant has also argued that the findings and judgment of the court are in conflict with the Tenth Amendment and Article 1 of Section VIII of the Constitution of the United States. We are of the opinion after study of United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, and the same cases cited on this point for appellant that the claim of unconstitutionality is without merit. J. F. Fitzgerald Construction Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316; Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Covington & Cincinnati Bridge Co. v. Commonwealth of Kentucky, 154 U.S. 204, 14 S.Ct. 1087, 38 L.Ed. 962; Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23.

We conclude that the judgments appealed from are without error.

Affirmed.