George P. SCHULTZ, Secretary of Labor, United States Department of Labor, Appellant,

v.

JACK SMITH'S AUTOMATIC TRANS-MISSION SERVICE, INC., a corporation, Appellee.

No. 13321.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 4, 1969.

Decided Feb. 10, 1970.

Carin Ann Clauss, Atty., Dept. of Labor, (L. H. Silberman, Solicitor of Labor, Bessie Margolin, Associate Solicitor, Donald S. Shire, Atty., and Beverley R. Worrell, Regional Atty., Dept. of Labor, on brief) for appellant.

Zach McGhee, Columbia, S. C., for appellee.

Before SOBELOFF, BRYAN and CRAVEN, Circuit Judges.

**SOBELOFF, Circuit Judge:**

The Secretary of Labor, appellant here, brought an action in the District Court under § 16(c) of the Fair Labor Standards Act[1] to recover minimum wages allegedly due one employee and unpaid overtime compensation allegedly due another employee of the appellee, Jack Smith's Automatic Transmission Service, Inc. The appellee claims that it is a "retail or service establishment," hence exempted by § 13(a)(2) from the Act's coverage.[2]

The District Court agreed with appellee's contention and the Secretary of Labor has appealed, asserting that appellee's business is not retailing or servicing but manufacturing or processing, and therefore not within the exemptive provision of § 13(a)(2).

Appellee maintains garages in Spartanburg and Greenville, South Carolina, and in Asheville, North Carolina, where it repairs and replaces transmissions in automobiles for individual car owners. As found by the District Judge, about 20% of the repaired transmissions were returned to the automobiles from which they were taken, but in about 80% of the cars, appellee actually replaced the worn or damaged transmissions with others it had reconditioned in its shop. It maintained a ready stock of these reconditioned transmissions so that it could expeditiously replace the worn or damaged transmissions.

Appellee obtained its transmission "cores," upon which the rebuilding process took place, from junkyards and wrecking companies, at sales or auctions

1. Section 16(c), 29 U.S.C. § 216, provides:
   The Secretary of Labor is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, * * *.

2. The pertinent provisions of § 13(a)(2), 29 U.S.C. § 213, state:
   (a) The provisions of section 206 and 207 of this title shall not apply with respect to— * * *
   (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located, * * *
   A "retail or service establishment" shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or both) is not for resale and is recognized as retail sales or services in the particular industry; * * *.

of defective new transmissions by automobile manufacturers, and from the old transmissions of previous customers' cars. The rebuilding process consisted of replacing all bad or defective parts. This process was by no means a minor one, for it entailed a considerable amount of time as evidenced by one witness who testified that in an average day a mechanic could rebuild only two transmissions.

I

First we must consider the appellee's challenge to the court's jurisdiction. Section 16(c), which provides the jurisdictional basis for the Secretary's action, contains a qualifying proviso upon which the appellee relies. The section authorizes the Secretary to bring an action to recover

the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee * * *

Provided, That this authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled.[3]

While it is undeniably true that the courts have never decided the precise question whether the business of rebuilding and replacing *transmissions* is covered or exempted by the Act, the issue of law raised here can hardly be deemed novel or unsettled. The courts in some of the earliest decisions under the Act have had occasion to deal with the exemption provision in relation to very similar reconditioning operations and have held them not exempt from coverage of the Act. In our own circuit

there have been two factually similar cases. Walling v. Roland Electric Co., 146 F.2d 745 (4th Cir. 1945), aff'd, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946) (reconditioning second-hand motors); Guess v. Montague, 140 F.2d 500 (4th Cir. 1943) (reconditioning second-hand machinery).[4] In each of these cases the court concluded that the reconditioning operations constituted manufacturing or processing and were covered by the Act.

This court, in another factual area, recognized that an issue of law is not to be regarded as unsettled merely because the case at bar does not identically repeat the facts in the adjudicated case. It is enough that a rule has been established and the new case falls within the rule. Mitchell v. Emala & Associates, Inc., 274 F.2d 781, 782–783 (4th Cir. 1960). The court went on to say that "such insistence would virtually nullify the salutary provision for the recovery of unpaid compensation without expense to the claimant." As Judge Brown felicitously declared in Wirtz v. Atlantic States Construction Co., 357 F. 2d 442, 448 (5th Cir. 1966), "[a] novel case is not contrived by urging incidental factual variations * * *." *Also see,* Mitchell v. Independent Ice & Storage Co., 294 F.2d 186, 189 (5th Cir. 1961); Austford v. Goldberg, 292 F.2d 234, 238–239 (8th Cir. 1961); Mitchell v. C & P Shoe Corp., 286 F.2d 109 (5th Cir. 1960).

These decisions are in accord with the legislative history of section 16(c), that the sole reason for the proviso was to preclude the Secretary "from pioneering new law or bringing test cases under the provisions of § 16(c). It is not intended, however, to preclude the administrator from initiating, or the court from taking jurisdiction, on the basis of existing legal precedence [sic] under the Fair Labor Standards Act of 1938, as

---

3. 29 U.S.C. § 216.

4. As explained later in this opinion, the fact that these cases were decided before

the 1949 amendments to the Act does not weaken their value to the instant case. *See* p. 168, *infra.*

amended * * *." 95 Cong.Rec. 14,879 (1949).

■ The basic issue presented in this case, whether the business in which appellee is engaged constituted manufacturing or processing, had "been settled with reasonable finality," Mitchell v. Emala & Associates, Inc., *supra*. The "incidental factual variations" between the reconditioning of transmissions and, for example, reconditioning second-hand machinery, Walling v. Roland Electric Co., *supra*; Guess v. Montague, *supra*, does not make this area of the law unsettled. The statute does not require a carbon copy of an earlier case. The principle having been well established in these cases, the factual differences between them and the one now under consideration do not warrant distinction.[5] For the courts to require identical factual situations before permitting an action under § 16(c) would restrict the Fair Labor Standards Act to an absurd degree. We cannot ascribe to Congress an intent to severely hobbling its remedial purpose.

## II

■ The appellee represents itself to us as a service station garage. It says it differs from other businesses of that kind only in that it specializes in one part of the automobile, its transmission. We cannot assent to this proposition. If the appellee merely replaced its customers' damaged transmissions with new ones which it had bought from a dealer, or if minimum repairs were performed on damaged transmissions, we would consider appellee's business analogous to that of a service station garage. However, by reconditioning and rebuilding worn transmissions and making of these useless "cores" workable transmissions, appellee is engaging in manufacturing or processing.

■ It is clearly settled that if manufacturing or processing operations take place on the premises of an establishment otherwise engaged in retail sales or services, the § 13(a) (2) exemption upon which appellee relies is not applicable.[6] Arnold v. Ben Kanowsky, 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed. 2d 393 (1960). The exemption provisions of the Act have always been narrowly construed against an employer and "their application limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, *supra* at 392, 80 S.Ct. at 456; Wirtz v. Jernigan, 405 F.2d 155, 158 (5th Cir. 1968).

In its brief, appellee prefers to call its work "rebuilding," which it maintains is not processing. The distinction is too subtle; we think the two words synonymous, admitting of no distinction of significance here. Analogous cases in this and other courts support our position.

We turn first to this circuit's decisions. The cases already cited in the discussion of the jurisdictional issue are also instructive in considering appellee's claim on the merits. In Guess v. Montague, 140 F.2d 500 (4th Cir. 1943), the defendant "operated a machinery repair shop, in which he repaired machinery for his customers, sold repair parts and rebuilt and sold second-hand machinery which he had purchased." Rejecting the contention that this constituted a "service establishment" within the meaning of § 13(a) (2), the court, speaking through Judge Parker, said

---

5. The appellee's contention is reminiscent of the whimsical "red wagon" story. A client related to his lawyer how he had been run over and injured by a red wagon. After research, the lawyer reported his conclusion that there was no legal basis for a claim because he had looked carefully through the law books under the heading of "red wagon" and could find no precedent.

6. In 1949 Congress amended the Act by enacting a new subsection, § 13(a) (4), so that an establishment engaged to any extent in manufacturing or processing operations may, in limited circumstances, qualify for exemption as a retail establishment. Appellee did not claim that it was exempt under this subsection and, therefore, we do not consider it.

"nor would the work done in rebuilding and reconditioning secondhand machinery for sale by defendant fall within the exemption, which does not extend to manufacturing or processing goods for sale * * *." [7] Likewise, in Walling v. Roland Electric Co., 146 F.2d 745, 749 (4th Cir. 1945), aff'd, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383 (1946), the court again held that the business of "reconditioning and sale of second hand motors" was "clearly not that of a retail or service establishment within the meaning of the Act." [8]

The similarity between reconditioning and rebuilding second-hand motors and machinery and reconditioning and rebuilding worn transmissions is obvious. We are of the opinion that the court's determination that reconditioning second-hand machinery and motors constitutes manufacturing or processing is directly controlling in the instant case.

The District Judge accepted the appellee's suggestion that *Montague* and *Roland Electric, supra,* are distinguishable on the ground that they were decided before the 1949 amendment of the Act. In this manner the District Judge was misled as to the scope of the amendment, and fell into error.

The history of the 1949 amendment is highly pertinent. Prior to 1949, the whole area of manufacturing and processing was excluded from the retail and service exemption. However, in that year Congress amended the requirements necessary for exemption by enacting § 13(a) (4), so that if a manufacturing-retailer could satisfy the requirements of § 13(a) (2), included in § 13(a) (4), plus additional requirements prescribed in the new subsection,[9] he would be exempt from the Act's standards. However, Congress did not extend the sweep of § 13(a) (2) to exempt the manufacturing-retailer. As was stated by the House Conferees, § 13(a) (2) "does not apply to any manufacturing activities since any such activities, when conducted by a retail establishment, if exempt [at all], are intended to be exempt under § 13(a) (4)." [10] The employer has not asserted in the District Court or on appeal any contention that it meets the more stringent requirements of § 13(a) (4). In the instant case, exclusive reliance is upon § 13(a) (2) and since, as we have seen, this employer's business operations are of the same character as others judicially held to be manufacturing or processing, it is not entitled to the § 13(a) (2) exemption.

In a parallel context, courts have considered whether particular activities constituted manufacturing operations. In various tax cases they have construed provisions of the Internal Revenue Code which impose an excise tax on the sale of automobile parts or accessories by the

---

7. Guess v. Montague, *supra* at 503.

8. In both *Montague* and *Roland Electric, supra,* the court made the further finding that the sales by these companies were "not sales to consumers and not retail sales" to bring them within exemption coverage. However, it is the determination that the nature of the defendants' businesses was manufacturing or processing that is legally relevant for us.

9. In relevant part § 13(a) (4), 29 U.S.C. § 213, states:
(a) The provisions of sections 206 and 207 of this title shall not apply with respect to — * * * (4) any employee employed by an establishment which qualifies as an exempt retail establishment under clause (2) [§ 13(a) (2)] of this subsection and is recognized as a retail establishment in the particular industry notwithstanding that such establishment makes or processes at the retail establishment the goods that it sells: *Provided,* That more than 85 per centum of such establishment's annual dollar volume of sales of goods so made or processed is made within the State in which the establishment is located; * * *.

10. Statement of the House Conferees, 95 Cong.Rec. 14,932 (1949), *cited* in Arnold v. Ben Kanowsky, *supra* at 503, 80 S.Ct. 453.

"manufacturer" or "producer," [11] and have concluded in substance as we do that reconditioners of automobile parts are to be treated as manufacturers. For example, in Hartley v. United States, 252 F.2d 262, 266 (5th Cir. 1958), the court held that a taxpayer engaged in rebuilding automobile engines was engaged in "manufacturing" and "producing." Likewise, in Hackendorf v. United States, 243 F.2d 760, 762–763 (10th Cir. 1957) it was said:

> The courts have generally held that rebuilding automobile parts such as armatures, generators, and connecting rods for sale constitutes manufacturing within the meaning of the statute. * * * There is no material difference in the rebuilding of armatures, generators, and connecting rods, and in rebuilding motors. Each is made up of component parts which are reworked or replaced when necessary. The end product in either case is a finished part of an automobile ready for installation.[12]

Considering the consistency with which courts have held various similar operations to be manufacturing or processing, we cannot find that appellee's business of rebuilding transmissions comes "plainly and unmistakably within [§ 13(a) (2)'s] terms and spirit." Arnold v. Ben Kanowsky, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). The appellee must comply with the wage standards of the Act.

The decision of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.

11. Internal Revenue Code of 1939, § 3403; Internal Revenue Code of 1954, § 4061 (b).

12. *Also see, e. g.,* De Boisblanc v. Usry, 272 F.2d 111 (5th Cir. 1959); Clawson & Bals v. Harrison, 108 F.2d 991 (7th Cir. 1940), cert. denied, 309 U.S. 685, 60 S.Ct. 808, 84 L.Ed. 1028.