**RUAN FINANCIAL CORPORATION and Ruan Transport Corporation, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 88–1711–B.**

United States District Court, S.D. Iowa, C.D.

Dec. 27, 1990.

Mark McCormick, Belin Harris Helmick & Tesdell, Des Moines, Iowa, Keith Martin, Evelyn E. Johnson, Andrew A. Giaccia, Chadburne & Park, Washington, D.C., for plaintiffs.

Christopher D. Hagen, U.S. Atty., Des Moines, Iowa, Roger W. Bracken, Seth G. Heald, Dept. of Justice, Tax Div., Spec. Litigation, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND RULINGS

VIETOR, Chief Judge.

Plaintiffs Ruan Financial Corporation and Ruan Transport Corporation (jointly referred to as "Ruan") brings suit seeking a refund of federal manufacturer's excise taxes, interest and penalties, on 12 highway tractors. Defendant United States of America counterclaims seeking federal manufacturer's excise taxes, plus interest and penalties, on an additional 414 highway tractors. Both parties move for summary judgment. I heard oral arguments and the motions are submitted.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.

Civ.P. 56(e). To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986); *Continental Grain Co. v. Frank Seitzinger Storage, Inc.*, 837 F.2d 836, 838 (8th Cir.1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Johnson v. Schopf*, 669 F.Supp. 291, 295 (D.Minn.1987). The quantum of proof that the nonmoving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986); *Johnson*, 669 F.Supp. at 295–96.

On a motion for summary judgment, the court views all the facts in the light most favorable to the nonmoving party, and gives that party the benefit of all reasonable inferences that can be drawn from the facts. *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1225 (8th Cir.1983); *Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620, 623 (8th Cir.1981).

### FACTS

The following facts are undisputed. Ruan purchases new highway tractors which it then leases to private businesses. The leases generally run for a period of five years, at the expiration of which Ruan either sells the used tractors or places them in its daily rental fleet.

In 1981, the tractor market was soft and Ruan decided not to attempt to sell the tractors coming in from its 1977 leases. Instead, it started the "Generation II" program which Ruan designed to improve the tractors so that they could be leased for an additional three to four years. This program continued until January 1985, during which time Ruan improved 426 tractors.

The Generation II program began in a warehouse in Corydon, Iowa, where Ruan disassembled the tractors and, on an individual basis, cleaned or replaced worn or damaged parts. Ruan replaced engines on the vast majority of the tractors. Ruan also did extensive cosmetic work including new paint, seats, carpeting and headliners. Ruan requested new Vehicle Identification Numbers (VINs) from the Iowa Department of Transportation, but the Department refused. In 1983, the Iowa General Assembly enacted Iowa Code § 321.1, granting new VINs to the Ruan tractors as "remanufactured" vehicles. Of the 426 tractors, Ruan leased 243, placing the remainder in its daily rental fleet. Ruan sold the tractors three to four years later for prices equivalent to other used tractors of the same age which had not undergone the Generation II process.

### DISCUSSION

Prior to April 1, 1983, 26 U.S.C. § 4061 applied an excise tax on manufacturers of highway tractors at the time of manufacture. By amendment effective April 1, 1983, 26 U.S.C. § 4051(a)(1)(E) places the tax on manufacturers at the time of the first retail sale of a highway tractor. A lease or other use by the manufacturer is considered a sale. 26 U.S.C. § 4217. The parties do not dispute that sales have taken place.

Although the Code does not define the term "manufacture", Treasury regulation 48.0–2(a)(4)(i) states:

> The term manufacturer includes any person who produces a taxable article from scrap, salvage, or junk material, or from new or raw material, by processing, manipulating, or changing the form of an article, or by combining or assembling two or more articles into a new article.

Court decisions and IRS rulings have found "manufacture" in a number of situations: (1) when the combining or assembling of parts is so extensive that one brings about the production of a new or different article; (2) when one changes the form of an arti-

cle; (3) when one rehabilitates an article that was of scrap or salvage value; and (4) when one rebuilds, as opposed to reconditions, an article. The parties also suggest that extending the useful life of an article constitutes manufacture.

### 1. Combining or Assembling Parts

■ The regulation provides that combining or assembling two or more articles into a new article constitutes manufacture. Applied to highway tractors, the use of a "glider kit" constitutes manufacture. *Boise Nat'l Leasing, Inc. v. United States*, 389 F.2d 633, 636 (9th Cir.1968); Rev.Rul. 71–584, 1971–2 C.B. 358; Rev.Rul. 77–447, 1977–2 C.B. 384; Rev.Rul. 78–205, 1978–1 C.B. 345; Rev.Rul. 86–130, 1986–45 I.R.B. 5, 1986–2 C.B. 179; TAM 7836003, IRS Letter Rulings Reports (CCH), Apr. 28, 1978. A glider kit "usually consists of a cab, fenders, dash instruments, wiring, steering wheel, steering gear, seats, chassis frame, front axle, and copper tubing for the brake system," Rev.Rul. 86–130, and when a company joins these parts with other parts obtained from a tractor, a functionally new vehicle results. An actual kit need not be used if the repairs are as extensive as a glider kit. *Boise*, 389 F.2d at 636; TAM 7836003.

In *Boise*, the court explains that a glider kit constitutes manufacture because

> [t]he old trucks had been permanently stripped of all their form, all their identity, and all their utility as vehicular structures and entities. * * * The dismantling had as its very purpose the permanent severance from the old truck structures and entities of some of the major components thereof and the incorporation of them as elements in other structures which were to be assembled.

389 F.2d at 636. The IRS made the same point in a private letter ruling.

> [W]ith these components removed, a wrecked vehicle, is no longer identifiable as a specific article. The remaining components do not have the form or substance of a truck-tractor, but are rather only an assemblage of parts.

TAM 7836003.

Viewing the facts in the light most favorable to Ruan, it did not use glider kits or glider kit equivalents. Ruan states that its Generation II program was a "mirror image" of the kits in that it focused on necessary replacement of all parts *except* the major components of a glider kit, i.e., the cab and chassis. Ruan further states that, unlike *Boise*, parts that were removed and rebuilt or cleaned were returned to the same chassis, with no interchanging of parts between tractors. Summary judgment for the government on this issue is inappropriate.

Viewing the facts in the light most favorable to the government, Ruan replaced many of the parts of a glider kit, including dash instruments and steering wheel gear, and it reinforced the cab on most of the tractors. I do not believe that replacement of the minor components of a glider kit, as opposed to the cab and chassis, constitute repairs so extensive as to create a new article under the regulation. Because parts were not interchanged between tractors, with salvaged parts being returned to the same cab and chassis from which they came, and because the main structural components of the cab and chassis remained intact, the tractors remained identifiable throughout the process. As *Boise* observes, "a dismantling of an old truck, with a repairing, reconditioning, replacing of some parts, and a reassembling of the truck elements, [might not] constitute the manufacturing of another truck." *Boise*, 389 F.2d at 636.

According to the government, "Ruan's Generation II program focused primarily, but not exclusively, on rebuilding or replacing" the "power train (engine, clutch, transmission and rear axles)" of a highway tractor. Noble Affidavit ¶ 9. Engine replacement, however, does not constitute manufacture. *See* Rev.Rul. 75–509, 1975–2 C.B. 420 (distinguishes Rev.Rul. 60–310 as involving change of transportation function of vehicles); TAM 8620003, IRS Letter Rulings Reports (CCH), Feb. 4, 1986. *But see* Rev.Rul. 60–310, 1960–2 C.B. 334. Ruan's motion for summary judgment on this issue will be granted.

### 2. Changing the Form

■ Manufacturing occurs when one significantly changes the form of a vehicle. *See* Rev.Rul. 60–155, 1960–1 C.B. 410 (shortens chassis); Rev.Rul. 69–418, 1969–2 C.B. 195 (chassis height lowered); Rev.Rul. 78–205 (lengthens trailer); Rev.Rul. 78–217, 1978–1 C.B. 346 (lengthens chassis); Rev. Rul. 82–157, 1982–36 I.R.B. 7, 1982–2 C.B. 288 (shortening chassis six inches not significant, and therefore, not manufacture); Rev.Rul. 83–149, 1983–2 C.B. 186 (lengthens trailer). Changing the transportation function of a vehicle. is a change in form. *See e.g. Vinal v. Peterson Mortuary, Inc.,* 353 F.2d 814, 815 (8th Cir.1965) (car modified into hearse); Rev.Rul. 64–335, 1964–2 C.B. 413 *modified by* Rev.Rul. 68–136, 1968–1 C.B. 453 (modified into mobile refrigeration unit); Rev.Rul. 74–262, 1974–1 C.B. 305 (mobile home converted into truck); Rev.Rul. 75–129, 1975–1 C.B. 336 (additional axle); Rev.Rul. 75–276, 1975–2 C.B. 432 (pneumatic unloading system); Rev.Rul. 76–129, 1976–1 C.B. 331 (modified into bulk cargo carrier); Rev.Rul. 78–311, 1978–2 C.B. 260 (modified into mobile washing unit); Rev.Rul. 79–192, 1979–1 C.B. 340 (modified into streetsweeper); Rev.Rul. 79–253, 1979–2 C.B. 368 (modified into mobile medical facility). Because Ruan did not alter the form or transportation function of its tractors, Ruan's motion for summary judgment on this issue will be granted.

### 3. Article of Scrap of Salvage Value

■ The regulation provides that producing a taxable article from "scrap, salvage or junk material" also constitutes manufacture. Treasury regulation 48.0–2(a)(4)(i). Thus revitalizing useless automotive parts is manufacture. *Hartley v. United States,* 252 F.2d 262 (5th Cir.1958) (rebuilt engines); *Hackendorf v. United States,* 243 F.2d 760 (10th Cir.), *cert. denied,* 355 U.S. 826, 78 S.Ct. 36, 2 L.Ed.2d 40 (1957) (same); *United States v. Armature Rewinding Co.,* 124 F.2d 589 (8th Cir.1942) (rebuilt generators); *United States v. Armature Exchange,* 116 F.2d 969 (9th Cir.), *cert. denied,* 313 U.S. 573, 61 S.Ct. 960, 85 L.Ed. 1531 (1941) (same). Likewise, revitalizing scrap tractors constitutes manufacture.

*See e.g.* Rev.Rul. 68–40, 1968–1 C.B. 452, (army surplus vehicles); Rev.Rul. 69–186, 1969–1 C.B. 285 (semitrailer).

An article may be "scrap" even though it is functional. In *Boise,* the taxpayer argued that it purchased old tractors for an amount greater than its salvage value, and therefore it had not produced an article "from scrap, salvage or junk material." Treasury regulation 48.0–2(a)(4)(i). The court disagreed because "what taxpayer must have desired to obtain, and all that it did obtain by the purchase, was the [parts] of the used trucks in the value which these could have as components or parts of the structures and entities which [taxpayer] was to create." 389 F.2d at 636. Therefore, the standard is whether the tractor has value as an entity rather than value as the mere sum of its parts.

The parties dispute the condition of the tractors prior to entering the Generation II program. Ruan states that each tractor had an estimated value of $10,000 prior to the process. The government notes that some of the tractors were towed to the facility, and a Ruan press release states that many of the tractors entering the program were of scrap or minimal value. This raises a genuine issue of material fact. If the tractors were in a condition that precluded further practical use as highway vehicles prior to the Generation II process, manufacturing has occurred. If not, then this test of manufacturing is not met. Summary judgment is not appropriate for either party on this issue.

### 4. Rebuilding

■ The government argues that rebuilding a tractor constitutes manufacture. A "rebuilding" test finds little support in the Internal Revenue Code, Regulations, or Revenue Rulings. In support of its argument, the government relies on legislative history to the 1983 amendment of § 4061. The House Ways and Means Committee wrote: "[a]s under present law, the rebuilding of a truck will be treated as a manufacture." H.R.Rep. No. 97–945, 97th Cong., 2d Sess., 14 (1982). In 1983, how-

ever, "present law" solely included the three previously enumerated tests.

The government also cites to cases where automotive parts were rebuilt. *Hartley v. United States*, 252 F.2d 262 (5th Cir.1958) (rebuilt engines); *Hackendorf v. United States*, 243 F.2d 760 (10th Cir.), *cert. denied*, 355 U.S. 826, 78 S.Ct. 36, 2 L.Ed.2d 40 (1957) (same); *United States v. Armature Rewinding Co.*, 124 F.2d 589 (8th Cir.1942) (rebuilt generators); *United States v. Armature Exchange*, 116 F.2d 969 (9th Cir.), *cert. denied*, 313 U.S. 573, 61 S.Ct. 960, 85 L.Ed. 1531 (1941) (same). In each of these cases, however, the parts were originally of scrap value. Because revitalizing scrap material constitutes manufacture under the third test, a separate "rebuilding" test is dicta. Additionally, the Treasury regulations specifically define rebuilding of automotive parts and accessories as manufacture.

> (a) *Rebuilt parts or accessories.* Rebuilding of automobile parts or accessories, as distinguished from reconditioning or repairing, constitutes manufacturing * * *. Reboring or other machining, rewinding, and comparable major operations constitute rebuilding.
>
> \*     \*     \*     \*     \*     \*
>
> (b) *Reconditioned parts or accessories.* The mere disassembling, cleaning, and reassembling (with any necessary replacement of worn parts) of automobile parts or accessories * * * are regarded as reconditioning operations rather than the manufacturing or production of rebuilt parts or accessories.

26 C.F.R. § 48.4061(b)–3. This regulation does not apply to heavy trucks and trailers. 26 C.F.R. § 145.4052–1(f). The implication is that "rebuilding" of heavy trucks and trailers is not manufacture.

■ Even if the "rebuilding" regulation applies to highway tractors, it would not require taxation of Ruan's Generation II vehicles. The regulation distinguishes between rebuilding and reconditioning. Rebuilding requires "[r]eboring or other machining, rewinding, and comparable major operations," 26 C.F.R. § 48.4061(b)–3(a), whereas "[t]he mere disassembling, clean-

ing, and reassembling (with any necessary replacements of worn parts)" is reconditioning and not manufacture. 26 C.F.R. § 48.4061(b)–3(b). In *Boise*, the court reached the same conclusion. "[A] dismantling of an old truck, with a repairing, reconditioning, replacing of some parts, and a reassembling of the truck elements, [might not] constitute the manufacturing of another truck." *Boise*, 389 F.2d at 636. *See also Schultz v. Jack Smith's Automatic Transmission Serv. Inc.*, 422 F.2d 104, 107 (4th Cir.1970).

**5. Extending the Useful Life**

■ The parties suggest that under the Treasury regulations, manufacturing occurs when repairs "extend the useful life" of the tractors to the point where they become "functionally new vehicles." *See* Plaintiffs' Brief in Support of Motion for Summary Judgment at 8; Defendant's Brief in Support of Motion for Summary Judgment at 12. The parties base this on the language of several Technical Advice Memoranda (TAM) and the legislative history of § 6111 of the Technical and Miscellaneous Revenue Act of 1988, Pub.L. 100–647, 102 Stat. 3342.

Technical Advice Memoranda are of no precedential value. 26 U.S.C. § 6110(j)(3). Further, three of the four memoranda relied upon by the parties base their holdings on case law and revenue rulings which establish the first three enumerated tests. TAM 8620003 (relying on Rev.Rul. 68–40); TAM 8027011, IRS Letter Rulings Reports (CCH), Mar. 25, 1980 (relying on Rev.Rul. 71–584, and *Boise*, 389 F.2d 633); TAM 7836003 (same). The fourth TAM cites no authority for its holding. TAM 8132026, IRS Letter Rulings Reports (CCH), May 1, 1981.

The legislative history cited in support of the "life extending" test supports the parties' argument. It states the third test is whether repairs "extend [the vehicle's] useful life." H.Rep. No. 1104, 100th Cong., 2d Sess. 178 (1988), *reprinted in* 1988 U.S. Code Cong. & Ad. News 4515, 5048, 5238. It found the "life extending" test "consistent with the intent of the statute." *Id.* This legislative history is not persuasive. "[T]he views of a subsequent Congress

form a hazardous basis for inferring the intent of an earlier one." *Waterman S.S. Corp. v. United States,* 381 U.S. 252, 269, 85 S.Ct. 1389, 1398, 14 L.Ed.2d 370 (1956).

Because most repairs extend the life of an article, this proposed test does not adequately define a taxable event. Rather, the focus of any definition of manufacture must be the creation of a newly identifiable article.[1]

## RULINGS

The motion for summary judgment of defendant United States of America is DENIED.

The motion for summary judgment of plaintiffs Ruan Financial Corporation and Ruan Transport Corporation is GRANTED in part, and it is adjudicated that the Generation II process did not change the form of an article, or combine or assemble two or more articles into a new article subject to tax under 26 U.S.C. §§ 4051, 4061. The plaintiffs' motion is otherwise DENIED because whether any or all of the tractors are subject to the tax because they were, before improvements, in a condition that precluded further practical use as highway vehicles is a disputed material fact issue.

---

1. At various times Ruan stated that it "rebuilt" or "remanufactured" tractors, and Ruan sought discounts from its suppliers on the basis that it was an "original equipment manufacturer." These statements are not a basis for taxation. Whether the Generation II program constitutes manufacture depends upon the actual improvements that Ruan made to the tractors.